[No. 51094-6. En Banc. November 14, 1985.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
IN
MICHAEL O. BRADLEY, ET AL, *Plaintiffs*, v. AMERICAN
SMELTING AND REFINING COMPANY, *Defendant*.

*Cooper & Tobin, Bill Tobin,* and *David F. Cooper,* for plaintiffs.

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* by *Ronald A. Roberts* and *Kathryn J. Nelson (Victor E.*

*Schwartz, Lorraine B. Halloway,* and *Liberty Mahshigian,* of counsel), for defendant.

CALLOW, J.—This comes before us on a certification from the United States District Court for the Western District of Washington. Plaintiffs, landowners on Vashon Island, had sued for damages in trespass and nuisance from the deposit on their property of microscopic, airborne particles of heavy metals which came from the American Smelting and Refining Company (ASARCO) copper smelter at Ruston, Washington.

The issues certified for answer are as follows:

1. Did the defendant have the requisite intent to commit intentional trespass as a matter of law?

2. Does an intentional deposit of microscopic particulates, undetectable by the human senses, upon a person's property give rise to a cause of action for trespassory invasion of the person's right to exclusive possession of property as well as a claim of nuisance?

3. Does the cause of action for trespassory invasion require proof of actual damages?

4. If a cause of action for intentional trespass is recognized in Washington, what are the appropriate limitations? What is the effect of the theory of continuing trespass and the discovery rule in this context? Are the affirmative defenses of prescription and preemption by other state laws recognized?

The parties have stipulated to the facts as follows: Plaintiffs Michael O. Bradley and Marie A. Bradley, husband and wife, are owners and occupiers of real property on the southern end of Vashon Island in King County, Washington. The Bradleys purchased their property in 1978. Defendant ASARCO, a New Jersey corporation doing business in Washington, operates a primary copper smelter on real property it owns in Ruston, which is an incorporated municipality surrounded by the city of Tacoma, Washington.

On October 3, 1983, plaintiffs brought this action against

defendant alleging a cause of action for intentional trespass and for nuisance.

Plaintiffs' property is located some 4 miles north of defendant's smelter. Defendant's primary copper smelter (also referred to as the Tacoma smelter) has operated in its present location since 1890. It has operated as a copper smelter since 1902, and in 1905 it was purchased and operated by a corporate entity which is now ASARCO. As a part of the industrial process of smelting copper at the Tacoma smelter, various gases such as sulfur dioxide and particulate matter, including arsenic, cadmium and other metals, are emitted. Particulate matter is composed of distinct particles of matter other than water, which cannot be detected by the human senses.

The emissions from the Tacoma smelter are subject to regulation under the Federal Clean Air Act, the Washington Clean Air Act (RCW 70.94) and the Puget Sound Air Pollution Control Agency (PSAPCA). Currently, the Tacoma smelter meets the National Ambient Air Quality Standards, both primary and secondary, for both sulfur dioxide and particulate matter. As a result of the variance granted by PSAPCA, the Tacoma smelter is also in compliance with PSAPCA Regulation I concerning particulate emissions.

As a part of defendant's smelting process, the Tacoma smelter emits into the atmosphere gases and particulate matter. For the purposes of resolving the certified questions, the parties stipulate that some particulate emissions of both cadmium and arsenic from the Tacoma smelter have been and are continuing to be deposited on plaintiffs' land. Defendant ASARCO has been aware since it took over operation of the Tacoma smelter in 1905 that the wind does, on occasion, cause smelter particulate emissions to blow over Vashon Island where plaintiffs' land is located.

The parties are squabbling to some extent about other "factual" assertions which are immaterial to the resolution of the issues posed by the certification. It was apparently stipulated that the record contains no proof of actual dam-

ages. Other matters have been brought to our attention in the briefs of the parties which may be pertinent to the disposition of the case by the Federal District Court, but which are not relevant to our inquiry.

This case was initiated in King County Superior Court and later removed to the United States District Court. Upon the plaintiffs moving for summary judgment on the issue of liability for the claimed trespass, the stated issues were certified to this court. The issues present the conflict in an industrial society between the need of all for the production of goods and the desire of the landowner near the manufacturing plant producing those goods that his use and enjoyment of his land not be diminished by the unpleasant side effects of the manufacturing process. A reconciliation must be found between the interest of the many who are unaffected by the possible poisoning and the few who may be affected.

> 1. Did the defendant have the requisite intent to commit intentional trespass as a matter of law?

The parties stipulated that as a part of the smelting process, particulate matter including arsenic and cadmium was emitted, that some of the emissions had been deposited on the plaintiffs' land and that the defendant has been aware since 1905 that the wind, on occasion, caused these emissions to be blown over the plaintiffs' land. The defendant cannot and does not deny that whenever the smelter was in operation the whim of the winds could bring these deleterious substances to the plaintiffs' premises. We are asked if the defendant, knowing what it had to know from the facts it admits, had the legal intent to commit trespass.

The Restatement (Second) of Torts § 158 (1965) states:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> (b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove.

In the comment on clause (a) of § 158, at 278 it is stated in part:

> i. *Causing entry of a thing.* The actor, without himself entering the land, may invade another's interest in its exclusive possession by throwing, propelling, or placing a thing either on or beneath the surface of the land or in the air space above it. Thus, in the absence of the possessor's consent or other privilege to do so, it is an actionable trespass to throw rubbish on another's land . . . In order that there may be a trespass under the rule stated in this Section, it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.

Addressing the definition, scope and meaning of "intent", section 8A of the Restatement (Second) of Torts says:

> The word "intent" is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

and we find in comment *b,* at 15:

> Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

The defendant has known for decades that sulfur dioxide and particulates of arsenic, cadmium and other metals were being emitted from the tall smokestack. It had to know that the solids propelled into the air by the warm gases would settle back to earth somewhere. It had to know that a purpose of the tall stack was to disperse the gas, smoke and minute solids over as large an area as possible and as far away as possible, but that while any resulting contamination would be diminished as to any one area or landowner, that nonetheless contamination, though slight, would follow. In W. Prosser, *Torts* § 8, at 31–32 (4th ed.

1971) intent is defined as follows:

> The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law will not sanction. The defendant may be liable although he has meant nothing more than a good–natured practical joke . . .
>
> . . .
>
> Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does. . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it.

(Footnotes omitted.)

This has been the reasoning of the decisions of this State. *Garratt v. Dailey,* 46 Wn.2d 197, 279 P.2d 1091 (1955) involved a 5–year–old boy who pulled a chair from under an arthritic woman as she was about to sit in it. The court held that to find liability for an intentional tort it had to be found that there was a volitional act undertaken with the knowledge and substantial certainty that reasonably to be expected consequences would follow.

It is patent that the defendant acted on its own volition and had to appreciate with substantial certainty that the law of gravity would visit the effluence upon someone, somewhere.

The defendant cites *Washington Natural Gas Co. v. Tyee Constr. Co.,* 26 Wn. App. 235, 611 P.2d 1378, *review denied,* 94 Wn.2d 1011 (1980) as standing for the proposition that the intent necessary to find a trespass is an intent to cause damage. We find nothing in that statement incon-

sistent with our holding that intent to trespass may also include an act that the actor undertakes realizing that there is a high probability of injury to others and yet the actor behaves with disregard of those likely consequences.

We find that the defendant had the requisite intent to commit intentional trespass as a matter of law.

2. Does an intentional deposit of microscopic particulates, undetectable by the human senses, upon a person's property give rise to a cause of action for trespassory invasion of the person's right to exclusive possession of property as well as a claim of nuisance?

The courts have been groping for a reconciliation of the doctrines of trespass and nuisance over a long period of time and, to a great extent, have concluded that little of substance remains to any distinction between the two when air pollution is involved. *Weller v. Snoqualmie Falls Lumber Co.*, 155 Wash. 526, 285 P. 446 (1930) held that the discharge of smoke, ashes and cinders from a sawmill upon a neighboring farm was "in the nature of a continuing nuisance" and that the 2–year statute of limitations applied. The opinion also stated that an action for damages could be maintained if the injury to the premises was substantial rather than slight. *See also Sterrett v. Northport Mining & Smelting Co.*, 30 Wash. 164, 70 P. 266 (1902).

We agree with the observations on the inconsequential nature of the efforts to reconcile the trappings of the concepts of trespass and nuisance in the face of industrial airborne pollution when Professor Rodgers states:

Trespass is a theory closely related to nuisance and occasionally invoked in environmental cases. The distinction between the two originally was the difference between the old action of trespass and the action on the case: if there was a direct and immediate physical invasion of plaintiff's property, as by casting stones or water on it, it was a trespass; if the invasion was indirect, as by the seepage of water, it was a nuisance.

Today, with the abandonment of the old procedural forms, the line between trespass and nuisance has become "wavering and uncertain." The basic distinction

is that trespass can be defined as any intentional invasion of the plaintiff's interest in the exclusive possession of property, whereas a nuisance requires a substantial and unreasonable interference with his use and enjoyment of it. That is to say, in trespass cases defendant's conduct typically results in an encroachment by "something" upon plaintiff's exclusive rights of possession.

The first and most important proposition about trespass and nuisance principles is that they are largely coextensive. Both concepts are often discussed in the same cases without differentiation between the elements of recovery. . . .

It is also true that in the environmental arena both nuisance and trespass cases typically involve intentional conduct by the defendant who knows that his activities are substantially certain to result in an invasion of plaintiff's interests. The principal difference in theories is that the tort of trespass is complete upon a tangible invasion of plaintiff's property, however slight, whereas a nuisance requires proof that the interference with use and enjoyment is "substantial and unreasonable." This burden of proof advantage in a trespass case is accompanied by a slight remedial advantage as well. Upon proof of a technical trespass plaintiff always is entitled to nominal damages. It is possible also that a plaintiff could get injunctive relief against a technical trespass—for example, the deposit of particles of air pollutant on his property causing no known adverse effects. The protection of the integrity of his possessory interests might justify the injunction even without proof of the substantial injury necessary to establish a nuisance. Of course absent proof of injury, or at least a reasonable suspicion of it, courts are unlikely to invoke their equitable powers to require expensive control efforts.

While the strict liability origins of trespass encourage courts to eschew a balancing test in name, there is authority for denying injunctive relief if defendant has exhausted his technological opportunities for control. If adopted generally, this principle would result substantially in a coalescence of nuisance and trespass law. Acknowledging technological or economic justifications for trespassory invasions does away with the historically harsh treatment of conduct interfering with another's possessory interests.

Just as there may be proof advantages in a trespass theory, there may be disadvantages also. Potential problems lurk in the ancient requirements that a trespassory invasion be "direct or immediate" and that an "object" or "something tangible" be deposited upon plaintiff's land. Some courts hold that if an intervening force, such as wind or water, carries the pollutants onto the plaintiff's land, then the entry is not "direct." Others define "object" as requiring something larger or more substantial than smoke, dust, gas, or fumes.

Both of these concepts are nonsensical barriers, although the courts are slow to admit it. The requirement that the invasion be "direct" is a holdover from the forms of action, and is repudiated by contemporary science of causation. Atmospheric or hydrologic systems assure that pollutants deposited in one place will end up somewhere else, with no less assurance of causation than the blaster who watches the debris rise from his property and settle on his neighbor's land. Trespassory consequences today may be no less "direct" even if the mechanism of delivery is viewed as more complex.

The insistence that a trespass involve an invasion by a "thing" or "object" was repudiated in the well known (but not particularly influential) case of Martin v. Reynolds Metals Co. [221 Or. 86, 342 P.2d 790 (1959)], which held that gaseous and particulate fluorides from an aluminum smelter constituted a trespass for purposes of the statute of limitations:

[L]iability on the theory of trespass has been recognized where the harm was produced by the vibration of the soil or by the concussion of the air which, of course, is nothing more than the movement of molecules one against the other.

. . .

The view recognizing a trespassory invasion where there is no 'thing' which can be seen with the naked eye undoubtedly runs counter to the definition of trespass expressed in some quarters. [Citing the Restatement (First), Torts and Prosser]. It is quite possible that in an earlier day when science had not yet peered into the molecular and atomic world of small particles, the courts could not fit an invasion through unseen physical instrumentalities into the requirement that a trespass can result only from a *direct* invasion. But in

this atomic age even the uneducated know the great and awful force contained in the atom and what it can do to a man's property if it is released. In fact, the now famous equation $E=MC^2$ has taught us that mass and energy are equivalents and that our concept of 'things' must be reframed. If these observations on science in relation to the law of trespass should appear theoretical and unreal in the abstract, they become very practical and real to the possessor of land when the unseen force cracks the foundation of his house. The force is just as real if it is chemical in nature and must be awakened by the intervention of another agency before it does harm.

*Martin* is quite right in hastening the demise of the "direct" and "tangible" limitations on the law of trespass. But any disappearance of these limits on the doctrine is likely to be accompanied by modifications of its strict liability advantages also. While parts per billion of fluorides or rays of light or magnetic invasions may work a trespass as effectively as flying rocks, it would seem that relief (particularly injunctive relief) should not follow without further inquiry into the limits of technology and prevailing land use patterns.

With regard to remedies, the trespass and nuisance cases are quite alike. *Martin* points up an important difference because the statutes of limitation for nuisances are generally shorter than those for trespasses. The measure of damages for a permanent trespass, like a nuisance, is depreciation of market value.

(Footnotes omitted.) W. Rodgers, *Environmental Law* § 2.13, at 154–57 (1977).

*Martin v. Reynolds Metals Co.*, 221 Or. 86, 90–91, 101, 342 P.2d 790 (1959) was an action in trespass brought against the defendant corporation for causing gases and fluoride particulates to settle on the plaintiffs' land making it unfit for livestock. The quote set forth from Rodgers' *Environmental Law* included a portion of the decision from that case. In addition, the court stated:

Trespass and private nuisance are separate fields of tort liability relating to actionable interference with the possession of land. They may be distinguished by comparing the interest invaded; and actionable invasion of a

possessor's interest in the exclusive possession of land is a trespass; an actionable invasion of a possessor's interest in the use and enjoyment of his land is a nuisance. 4 Restatement, Torts 224 Intro. Note Chapter 40.

The same conduct on the part of a defendant may and often does result in the actionable invasion of both of these interests, in which case the choice between the two remedies is, in most cases, a matter of little consequence. Where the action is brought on the theory of nuisance alone the court ordinarily is not called upon to determine whether the conduct would also result in a trespassory invasion. In such cases the courts' treatment of the invasion solely in terms of the law of nuisance does not mean that the same conduct could not also be regarded as a trespass. Some of the cases relied upon by the defendant are of this type; cases in which the court holds that the interference with the plaintiff's possession through soot, dirt, smoke, cinders, ashes and similar substances constitute a nuisance, but where the court does not discuss the applicability of the law of trespass to the same set of facts.

However, there are cases which have held that the defendant's interference with plaintiff's possession resulting from the settling upon his land of effluents emanating from defendant's operations is exclusively nontrespassory. Although in such cases the separate particles which collectively cause the invasion are minute, the deposit of each of the particles constitutes a physical intrusion and, but for the size of the particle, would clearly give rise to an action of trespass. The defendant asks us to take account of the difference in size of the physical agency through which the intrusion occurs and relegate entirely to the field of nuisance law certain invasions which do not meet the dimensional test, whatever that is. In pressing this argument upon us the defendant must admit that there are cases which have held that a trespass results from the movement or deposit of rather small objects over or upon the surface of the possessor's land.

. . .

We hold that the defendant's conduct in causing chemical substances to be deposited upon the plaintiffs' land fulfilled all of the requirements under the law of trespass.

(Citations omitted.) We hold that theories of trespass and nuisance are not inconsistent, that the theories may apply concurrently, and that the injured party may proceed under both theories when the elements of both actions are present. The Restatement (Second) of Torts § 821D, comment *d*, at 102 (1979) states:

> For an intentional trespass, there is liability without harm; for a private nuisance, there is no liability without significant harm. In trespass an intentional invasion of the plaintiff's possession is of itself a tort, and liability follows unless the defendant can show a privilege. In private nuisance an intentional interference with the plaintiff's use or enjoyment is not of itself a tort, and unreasonableness of the interference is necessary for liability.

Comment *e,* at 102 states:

> There may, however, be some overlapping of the causes of action for trespass and private nuisance. An invasion of the possession of land normally involves some degree of interference with its use and enjoyment and this is true particularly when some harm is inflicted upon the land itself. The cause of action for trespass has traditionally included liability for incidental harms of this nature. If the interference with the use and enjoyment of the land is a significant one, sufficient in itself to amount to a private nuisance, the fact that it arises out of or is accompanied by a trespass will not prevent recovery for the nuisance, and the action may be maintained upon either basis as the plaintiff elects or both. . . .
>
> The two actions, trespass and private nuisance, are thus not entirely exclusive or inconsistent, and in a proper case in which the elements of both actions are fully present, the plaintiff may have his choice of one or the other, or may proceed upon both.

We also should recognize the fallacy of clinging to outmoded doctrines. The distinction between direct and indirect invasions to land was abandoned in *Zimmer v. Stephenson,* 66 Wn.2d 477, 403 P.2d 343 (1965). There the defendant had been plowing a fireguard in his field when a spark escaped from the exhaust stack of his tractor and set on fire the plaintiff's adjoining wheat field. An action was

commenced more than 2 years but less than 3 years from the date of the fire. The trial court held that an action would not lie in trespass due to the indirect nature of the invasion, and dismissed the case.

The opinion states in part at pages 482–83:

> The common law, along with its forms of action, has long been recognized as capable of growth and expansion in keeping with the necessities of modern society. The writings of Chitty and Coke have long been absent from the library shelves of most practicing attorneys, and, if for no other reason, the fine, though oftentimes indiscernible distinctions, between the ancient writs of trespass and trespass on the case should not be unduly preserved in aid of a statute of limitations. The proper rule should now be as enunciated in Restatement, Torts § 165, p. 390:
>
>> One who recklessly or negligently, or as a result of an extra hazardous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor thereof or to a thing or a third person in whose security the possessor has a legally protected interest.

*See also* 35 Wash. L. Rev. 474 (1960); 46 Wash. L. Rev. 47, 114–16 (1970).

■ Having held that there was an intentional trespass, we adopt, in part, the rationale of *Borland v. Sanders Lead Co.,* 369 So. 2d 523, 529 (Ala. 1979), which stated in part:

> Although we view this decision as an application, and not an extension, of our present law of trespass, we feel that a brief restatement and summary of the principles involved in this area would be appropriate. Whether an invasion of a property interest is a trespass or a nuisance does not depend upon whether the intruding agent is "tangible" or "intangible." Instead, an analysis must be made to determine the interest interfered with. If the intrusion interferes with the right to exclusive possession of property, the law of trespass applies. If the intrusion is to the interest in use and enjoyment of property, the law of nuisance applies. As previously observed, however,

remedies of trespass and nuisance are not necessarily mutually exclusive.

. . .

Under the modern theory of trespass, the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect and, hence, only a nuisance. In order to recover in trespass for this type of invasion [i. e., the asphalt piled in such a way as to run onto plaintiff's property, or the pollution emitting from a defendant's smoke stack, such as in the present case], a plaintiff must show 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the *res.*

(Footnote omitted.)

We accept and approve the elements of trespass by airborne pollutants as set forth by the *Borland* case. *See also Roberts v. Permanente Corp.,* 188 Cal. App. 2d 526, 10 Cal. Rptr. 519 (1961); *Sheppard Envelope Co. v. Arcade Malleable Iron Co.,* 335 Mass. 180, 138 N.E.2d 777 (1956). We note, but decline to follow *Arvidson v. Reynolds Metals Co.,* 125 F. Supp. 481 (W.D. Wash. 1954); and *Ryan v. Emmetsburg,* 232 Iowa 600, 4 N.W.2d 435 (1942).

3. Does the cause of action for trespassory invasion require proof of actual damages?

When airborne particles are transitory or quickly dissipate, they do not interfere with a property owner's possessory rights and, therefore, are properly denominated as nuisances. *Born v. Exxon Corp.,* 388 So. 2d 933 (Ala. 1980); *Ryan v. Emmetsburg, supra; Amphitheaters, Inc. v. Portland Meadows,* 184 Or. 336, 198 P.2d 847, 5 A.L.R.2d 690 (1948). When, however, the particles or substance accumulates on the land and does not pass away, then a trespass has occurred. *Borland v. Sanders Lead Co., supra; Martin v. Reynolds Metals Co., supra.* While at common law any trespass entitled a landowner to recover nominal or punitive damages for the invasion of his property, such a rule is

not appropriate under the circumstances before us. No useful purpose would be served by sanctioning actions in trespass by every landowner within a hundred miles of a manufacturing plant. Manufacturers would be harassed and the litigious few would cause the escalation of costs to the detriment of the many. The elements that we have adopted for an action in trespass from *Borland* require that a plaintiff has suffered actual and substantial damages. Since this is an element of the action, the plaintiff who cannot show that actual and substantial damages have been suffered should be subject to dismissal of his cause upon a motion for summary judgment.

4. If a cause of action for intentional trespass is recognized in Washington, what are the appropriate limitations? What is the effect of the theory of continuing trespass and the discovery rule in this context? Are the affirmative defenses of prescription and preemption by other state laws recognized?

We have recognized that the intrusion to land from this kind of an invasion, once thought to be a trifling interference with the actual use of the land, may be very devastating indeed. The former approach, whether arising from the infrequency with which interference occurred, the unsophisticated nature of earlier air pollutants or because of our lack of awareness of their potential for harm, we now abandon. It is appropriate, therefore, that having recognized this intrusion upon land as a trespass, the 3–year statute of limitations should apply. RCW 4.16.080(1). An action for trespass to land must be brought within 3 years of the invasion to the premises. *Vern J. Oja & Assocs. v. Washington Park Towers, Inc.*, 89 Wn.2d 72, 75, 569 P.2d 1141 (1977); *Suter v. Wenatchee Water Power Co.*, 35 Wash. 1, 76 P. 298 (1904). We now hold that when the actions of a defendant have (1) invaded the plaintiff's interest in the exclusive possession of his property, (2) been committed intentionally, (3) been done with the knowledge and reasonable foreseeability that the act would disturb the

plaintiff's possession, and (4) caused actual and substantial damages, the 3–year statute of limitations applies. To the extent that they are inconsistent with this holding, *Riblet v. Spokane–Portland Cement Co.,* 41 Wn.2d 249, 248 P.2d 380 (1952); *Weller v. Snoqualmie Falls Lumber Co.,* 155 Wash. 526, 285 P. 446 (1930); and *Sterrett v. Northport Mining & Smelting Co.,* 30 Wash. 164, 70 P. 266 (1902) are overruled.

*Songstad v. Municipality of Metro Seattle,* 2 Wn. App. 680, 472 P.2d 574 (1970), commenting upon *Zimmer v. Stephenson,* 66 Wn.2d 477, 403 P.2d 343 (1965) (which we have previously quoted), observed that intentional intrusions fall within the ambit of RCW 4.16.080(1). The action of the defendant amounts to a continuing trespass which is defined by the Restatement (Second) of Torts § 158, comment *m* as "[a]n unprivileged remaining on land in another's possession". Assuming that a defendant has caused actual and substantial damage to a plaintiff's property, the trespass continues until the intruding substance is removed. If such is the case, and damages can be proved, as required, actions may be brought for uncompensated injury. In view of our holding that the tort falls within the theory of continuing trespass, we further find that the 3–year period of limitations must run from the date that the cause of action accrues. We reject the discovery rule as being inappropriate for a continuing trespass claim. The discovery rule begins the running of the statute of limitations when the plaintiff discovers or reasonably could have discovered, in the exercise of reasonable diligence, that he had a cause of action. *U.S. Oil & Ref. Co. v. Department of Ecology,* 96 Wn.2d 85, 91, 633 P.2d 1329 (1981). With circumstances, such as confront us here, and in the interests of certainty, it would be improper to expose manufacturers to claims running back for untold years when the injury many years back may have been inconsequential and the very existence of a cause of action vague and speculative. Further, in ruling that actual and substantial damages are required, we find it proper to also require that damages claimed not extend past the 3–

year period of limitations.

■ Defendant argues that we should allow, as a defense, a claim of prescriptive easement and preemption by the Washington Clean Air Act. We note that RCW 4.16.020(1) creates a right of adverse possession 10 years after initial possession. In order to obtain a prescriptive easement the defendant would have to show (1) use adverse to the title owner, (2) open, notorious, continuous and uninterrupted use for 10 years, and (3) the owner's knowledge of the adverse use when he was able to enforce his rights. *Dunbar v. Heinrich,* 95 Wn.2d 20, 22, 622 P.2d 812 (1980). There is little likelihood that the doctrine of prescriptive easement will have application to the situation before us. To gain a prescriptive easement, the use must be open, notorious, continuous and uninterrupted for a period of 10 years. We have observed that invasion by particulate matter is not open and notorious and therefore it would indeed be difficult to establish on the part of a defendant that the prescriptive easement period had run. However that may be, there may be instances when a defendant can establish as a defense all of the elements of prescriptive easement, thereby precluding any recovery by a landowner. As a practical matter, this would indeed be a blatant and flagrant pollution of adjoining land to start the running of the prescriptive period and to forever bar the landowner from recovering for the continuing activity of the polluter. We recognize the possibility and recognize also that whether or not the invasion of the plaintiffs' land was open and notorious is a question of fact to be established in a forum other than this court.

■ Defendant also proposes that the Washington Clean Air Act permits only suits in nuisance. RCW 70.94.230 provides in part:

> [N]othing herein shall be construed to supersede any local county, or city ordinance or resolution, or any provision of the statutory or common law pertaining to nuisance . . .

RCW 70.94.901 provides in part:

This 1967 amendatory act shall not be construed to create in any way nor to enlarge, diminish or otherwise affect in any way any private rights in any civil action for damages.

This is a civil action for damages, and the Washington Clean Air Act specifically does not preclude such suits.

In conclusion, we answer the certified questions as follows:

1. The defendant had the requisite intent to commit intentional trespass.

2. An intentional deposit of microscopic particulates, undetectable by the human senses, gives rise to a cause of action for trespass as well as a claim of nuisance.

3. A cause of action under such circumstances requires proof of actual and substantial damages.

4. The appropriate limitations period for such a trespass is 3 years, but if the trespass continues, suit for damages may be brought for any damages not recovered previously and occurring within the 3–year period preceding suit. The period of limitations runs from the date the cause of action accrues. The defense of easement by prescription is available if the defendant can prove each of the elements of the defense. The cause of action for trespass is not preempted by the Washington Clean Air Act.

The United States District Court for the Western District of Washington shall be notified for such further action as it deems appropriate.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.