IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MAUREEN ERICKSON, | ) | No. 32209-2-III |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| WILLIAM BETHMANN & ROSSLYN | ) | |
| BETHMANN, husband and wife; KAREN | ) | UNPUBLISHED OPINION |
| S. CARSON (WALKER), an individual; | ) | |
| SHAWNA K. MILLER & JEFFREY S. | ) | |
| MILLER, wife & husband; THOMAS C. | ) | |
| JONES & XANDREA M. JONES, | ) | |
| husband and wife; MICHAEL A. | ) | |
| TEDESCO & CHERIE E. TEDESCO, | ) | |
| husband and wife; CLYDE DARRAH, an | ) | |
| individual; SEDCO PROPERTIES, LLC, a | ) | |
| Washington limited liability; PATRICK O' | ) | |
| CALLAGHAN & MIRANDA | ) | |
| O'CALLAGHAN, husband and wife, E. | ) | |
| DAWES EDDY & MARY KAY EDDY, | ) | |
| husband & wife; FRANKLIN V. | ) | |
| JOHNSTON, III, an individual; and | ) | |
| KWONG HWA & SEONG JUN LEE, | ) | |
| husband and wife, | ) | |
| | ) | |
| Respondents. | ) | |

BROWN, A.C.J. — Maureen Erickson appeals the trial court's order granting

summary judgment dismissal of her intentional water trespass claim against William and

Rosslyn Bethmann, Karen S. Carson (Walker), Shawna and Jeffrey Miller, Thomas and

Xandrea Jones, Michael and Cherie Tedesco, Clyde Darrah, Sedco Properties, LLC, Patrick and Miranda O'Callaghan, E. Dawes and Mary Kay Eddy, Franklin V. Johnston, III, and Kwong Hwa and Seong Jun Lee (the respondents). Ms. Erickson contends the trial erred analyzing (1) intent, (2) foreseeability, (3) abatement, and (4) easements. We disagree with her contentions and affirm.

## FACTS

Ms. Erickson owns a residential lot in the Qualchan Hills subdivision in Spokane, Washington. Her lot is situated at the bottom of a v-shaped drainage basin. The 1992 subdivision plat depicted a drainage easement on Ms. Erickson's lot. The plat granted the drainage easement to the Qualchan Hills Planned Unit Development Homeowners Association (HOA), but the Qualchan Hills HOA was instead formed and operated in its place without objection until this dispute arose. The Qualchan Hills HOA operates and maintains the subdivision's storm water drainage under the 1992 drainage plan in which Ms. Erickson's lot is the terminus for surface and storm water drainage. In 2001, a Joint Drainage Agreement for Qualchan Subdivisions was recorded; this agreement involved different HOAs and detailed the drainage plan for the area at issue here. Under this agreement, Ms. Erickson's lot is the terminus for all surface and storm water drainage from the entire basin, including from properties located uphill from Ms. Erickson's lot belonging to those respondents who are members of the Overlook HOA.

Before 2009, Ms. Erickson's lot experienced no drainage problems. In September 2009, the Qualchan Hills HOA authorized construction of a concrete

extension resulting in greatly increased drainage onto Ms. Erickson's lot, overburdening her small drainage pond and causing flooding. The city of Spokane had expressed concerns about this drainage pond's capacity since 2006.

Ms. Erickson sued the Qualchan Hills HOA and most of the uphill property owners, complaining about the drainage.[1] Apparently the Qualchan Hills HOA is in binding arbitration. Ms. Erickson classifies the remaining individual respondents as either "Drainage System Respondents," or those whose lots lie on the uphill side of Bolan Avenue, or "Bolan Avenue Respondents," or those whose lots lie on the downhill side of Bolan Avenue.[2] The Drainage System Respondents own sloped lots with manmade drainage depressions that ultimately discharge drainage onto Ms. Erickson's lot. The Bolan Avenue Respondents' lots have plastic pipes running through their lots that drain onto Ms. Erickson's lot.

Regardless of how the respondents are classified, all homes located on these lots were constructed and drained water onto Ms. Erickson's lot before the 2009 concrete extension. All respondents purchased their homes pursuant to the established drainage plan that included drainage easements on their respective lots. Those respondents with drainage depressions on their lots did not create or alter the depressions. Similarly, those respondents with plastic pipes on their lots did not install

---

[1] Apparently the Qualchan Hills HOA is in binding arbitration.

[2] The Drainage System Respondents include the Bethmanns, Ms. Carson (Walker), the Millers, the Jones, the Tedescos, Mr. Darrah, the Eddys, and the O'Callaghans. These respondents belong to the Overlook HOA. The Bolan Avenue Respondents include Mr. Johnson, the Lees, and Sedco Properties. They belong to the Qualchan Hills HOA.

or move those pipes. All respondents have used their respective lots in a consistent manner since purchase. All respondents use their lots in an ordinary manner, maintaining no swimming pools or ponds with routine irrigation. All respondents are precluded from individually interfering with the drainage systems they acquired, and no evidence shows such interference.

The trial court granted the respondents' summary judgment motion, concluding no intentional trespass existed as Ms. Erickson "failed to demonstrate that the [respondents] intentionally or knowingly diverted water onto her property, nor that [the flooding] was reasonably foreseeable." Clerk's Papers (CP) at 459. She appealed.

## ANALYSIS

The issue is whether the respondents committed intentional trespass and/or continuing trespass onto Ms. Erickson's lot.[3] She contends the intentional act directly causing invasion of her lot was the respondents' channeling of surface and storm water into the pre-existing drainage systems on the respondents' respective properties that in turn led to water accumulating on her lot after installation of a concrete extension constructed by the Qualchan Hills HOA. We note Ms. Erickson's easement contention without discussion because she asserts the drainage easement held by the Qualchan

---

[3] Ms. Erickson initially argues the respondents are committing a continuing trespass. However, within that argument, she contends the respondents committed intentional trespass. As a continuing intentional trespass requires showing the same initial elements as an intentional trespass claim, intentional trespass is first discussed. *See Crystal Lotus Enters. Ltd. v. City of Shoreline*, 167 Wn. App. 501, 502, 506, 274 P.3d 1054 (2012); *Wallace v. Lewis County*, 134 Wn. App. 1, 15-16, 137 P.3d 101 (2006).

4

Hills HOA is void or overburdened and does not argue the respondents hold any additional easements. Thus, her easement concerns are inapplicable to respondents.

Preliminarily, we deny the respondents' motion to strike the affidavits of Ms. Erickson and her expert, John DeLeo, based on hearsay and conclusory statements lacking foundation. Affidavits filed in conjunction with a motion for summary judgment may be stricken if the affidavits set forth facts inadmissible in evidence. *Bonneville v. Pierce County*, 148 Wn. App. 500, 508-09, 202 P.3d 309 (2008). However, a party waives any defect if the party fails to object or bring a motion to strike any deficiencies. *Id.* at 509; *see also* RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court.").

In the proceedings below, the respondents objected to many statements in Ms. Erickson's and Mr. DeLeo's affidavits. But as Ms. Erickson correctly notes, none of those objections were based on hearsay. Thus, we decline to review these objections. Similarly, we decline to review the remaining objections to Ms. Erickson's affidavit because the respondents' objections were limited to relevance. They did not argue the statements were conclusory statements lacking foundation. Moreover, after Ms. Erickson addressed the objections in her supplemental affidavit, the respondents failed to renew or make new objections. We also decline to review objections to Mr. DeLeo's affidavits as the respondents did not object below that the affidavits failed to present evidence of the natural accumulation on or drainage rate to Ms. Erickson's lot. While

5

the respondents did mention Mr. DeLeo failed to identify the date and quantity of each water intrusion, this played no role in deciding the case and need not be addressed. *See Crystal Ridge Homeowners Ass'n v. City of Bothell*, 182 Wn.2d 665, 679 n.14, 343 P.3d 746 (2015). We turn now to the merits.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. *Woodward v. Lopez*, 174 Wn. App. 460, 467, 300 P.3d 417 (2013). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Visser v. Craig*, 139 Wn. App. 152, 157, 159 P.3d 453 (2007) (quoting CR 56(c)). Evidence submitted and all reasonable inferences from the evidence are considered in the light most favorable to the nonmoving party. *Woodward*, 174 Wn. App. at 468.

"Liability for trespass exists only when there is an intentional or negligent intrusion." *Hughes v. King County*, 42 Wn. App. 776, 780, 714 P.2d 316 (1986). The concept includes trespass by water. *Buxel v. King County*, 60 Wn.2d 404, 409, 374 P.2d 250 (1962). To establish intentional trespass, a plaintiff must show (1) invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages. *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 692-93, 709 P.2d 782 (1985). Regarding the second element, intent "denote[s]

6

that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at 682 (quoting 8A RESTATEMENT (SECOND) OF TORTS § 158). Here, the intent and reasonable foreseeability elements of intentional trespass are disputed. The respondents argue Ms. Erickson failed to quantify the damage, but, as concluded below, Ms. Erickson failed to present evidence demonstrating a genuine material fact issue on intent and foreseeability, so her failure to quantify damages is not material to the outcome.

Active channeling is typically the focus in the few cases where intentional water trespass is discussed. For instance, in *Hedlund v. White*, the plaintiff alleged trespass where the defendant installed a new drainage system, thereby increasing the flow of water into a swale. 67 Wn. App. 409, 411, 836 P.2d 250 (1992). The court found the defendant trespassed because the drainage system discharged water into the swale that would not naturally flow into that swale. *Id.* at 417-18. Similarly, in *Buxel*, the defendant county installed a culvert beneath a road; this changed the drainage pattern, causing the plaintiff's property to flood. 60 Wn.2d at 406. The court upheld the county's liability for trespass, finding the county collected, diverted, and discharged waters through a system of artificial channels. *Id.* at 408-09.

Passive usage of a pre-existing system is, on the other hand, typically the focus when courts have found no intentional trespass. In *Hughes*, King County obtained an easement through the plaintiff's property for installation of a drainage system. 42 Wn. App. at 777-78. Following complaints of flooding, King County enlarged the system's

7

capacity. *Id.* at 778. Eleven years later, more flooding was reported; after a particularly large storm, the plaintiff's property flooded. *Id.* The court found no trespass occurred because King County did nothing to cause the intrusion of water into the drainage system and did not materially alter the flow of water through the system. *Id.* at 780-81 (finding no trespass under a theory of intentional trespass, negligent trespass, or trespass by overburdening an easement). Similarly, in *Jackass Mountain Ranch*, the court upheld dismissal of the intentional trespass claim against an irrigation system operator whose system created a landslide which damaged the plaintiff's property because there was no intent. *Jackass Mtn. Ranch, Inc. v. S. Columbia Basin Irr. Dist.*, 175 Wn. App. 374, 401-02, 305 P.3d 1108 (2013). The court found prior knowledge of landslides was not enough to impute intent to the operator. *Id.* at 402. While the evidence did show landslides occurred after water was introduced, no evidence existed the operator knew the irrigation system would cause such a slide. *Id.*; *see also Crystal Lotus Enters. Ltd.*, 167 Wn. App. at 502, 506 (finding no intentional trespass where the defendant city merely continued using its storm water system which created swamp-like conditions on the plaintiff's property because the defendant did not engage in an intentional act).

The essentially undisputed facts show storm and surface water was being channeled onto Ms. Erickson's lot before 2009 without problems. The respondents' homes, irrigation systems, and impervious surfaces existed prior to that date. In September 2009, the Qualchan Hills HOA installed a concrete extension, channeling

drainage onto Ms. Erickson's lot and causing flooding. The respondents had no involvement in the design, construction, or alteration of the drainage system. All but one respondent purchased their home prior to September 2009.

Ms. Erickson unpersuasively argues the respondents' acts of collecting and channeling their drainage into the subdivision's drainage system were intentional because the respondents were aware their drainage would be channeled onto the property of others. But Washington cases support the trial court's conclusion that an intentional affirmative act is needed to meet the second element of intentional trespass: all of the cases where trespass was found involved active channeling and/or discharging of water.

Minimizing this, Ms. Erickson argues *Hedlund* stands for the proposition that the mere act of discharging the water is enough to find intent. *See Hedlund*, 67 Wn. App. at 416 ("A landowner may discharge surface water onto adjoining land through a natural watercourse or natural drainway . . . but not through a culvert or drain artificially constructed and located apart from a natural watercourse or natural drainway.") (citations omitted). But each case used by the *Hedlund* court to support this proposition involves a situation where the party took some affirmative act. *See Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 523 P.2d 186 (1974), *overruled on other grounds by Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998) (reversing summary judgment for defendant in an inverse condemnation action where the city approved a plan for a new subdivision's drainage system and the defendant constructed

9

the system accordingly, which carried water onto the plaintiff's lands); *Colella v. King County*, 72 Wn.2d 386, 433 P.2d 154 (1967) (finding county breached its duty when it transferred the surface water from a road across the acquired easement, into the ravine, and then to plaintiff's property); *King County v. Boeing Co.*, 62 Wn.2d 545, 384 P.2d 122 (1963) (finding county could not discharge surface waters onto property where the new drainage system was installed without gaining the consent of the owner of the property under which the system ran); *Island County v. Mackie*, 36 Wn. App. 385, 675 P.2d 607 (1984) (issuing an injunction against landowners where landowners plugged a culvert under a road, which caused the water to back up and led to the road's collapse).

No respondent here engaged in affirmative intentional acts. All acts were passive. As Ms. Erickson stated, "it is unclear what, if any, involvement or knowledge any of the individual lot owners had." CP at 425. The Drainage System Respondents merely continued to use the drainage system as they had done in the past. Their use of the drainage system did not change despite the extension of the drainage system in 2009. As for the Bolan Avenue Respondents, one had the black pipes on their property prior to purchase. Again, nothing changed except for the installation of the concrete extension in 2009, when the flooding of Ms. Erickson's lot occurred. As for Mr. Johnson and Sedco, black pipes already existed on their property prior to purchase. Concerns about slope stability led to the city of Spokane requiring the previous lot owners to take action. The previous lot owners installed retaining walls, but no evidence showed this changed the drainage pattern. Rather, Ms. Erickson asserted the concrete extension

"cause[d] water that previously infiltrated into the ground above my property . . . to be channeled downhill and into my property." CP at 205.

Ms. Erickson nevertheless contends an intentional act can encompass the failure to act. She partly argues by failing to install drywells as instructed to by the Qualchan Hills HOA, the Lees intentionally trespassed on her property. First, in 2006, the Lees were directed to take action to remove sediment from a road and dispose of it on their property. This directive from the Qualchan Hills HOA had nothing to do with concerns about flooding the Erickson property. Second, while Ms. Erickson provides materials from the Lees' neighbor about his efforts to dispose of sediment, she summarily concludes the Lees failed to do the same; she provides no supporting material for this conclusion. *See Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) (conclusory statements of fact are insufficient to demonstrate genuine issue of material fact).

Moreover, Ms. Erickson's legal argument for this contention fails. She cites to *Woldson v. Woodhead*, 159 Wn.2d 215, 149 P.3d 361 (2006), asserting *Woldson* stands for the proposition that a failure to act constitutes a trespass. However, *Woldson* was not about the intent element of trespass; it was about when damages start to accrue for continuing trespass. She also cites to *Bradley*, arguing the Washington Supreme Court's quotation of the Restatement (Second) of Torts necessarily means "failure to remove from the land a thing which he is under a duty to remove" supports her claim the respondents had the requisite intent. *Bradley*, 104 Wn.2d at 681-82

11

(quoting RESTATEMENT (SECOND) OF TORTS § 158). However, despite the quoted language, *Bradley* was not a failure to act case; it was a case where the defendant intentionally entered onto the land of another. *Id.* at 682. Additionally, this court has recognized that "[f]ailure to act is affiliated with a negligence claim and does not support the intentional act needed for trespass." *Jackass Mtn. Ranch, Inc.*, 175 Wn. App. at 402. Ms. Erickson does not argue negligent trespass. Regardless, the facts here do not place a duty to remove upon the respondents. Next, we turn to foreseeability.

Ms. Erickson also fails to establish reasonable foreseeability. Taking the facts most favorably to her, the respondents can be charged with constructively knowing Ms. Erickson's lot was the terminus for the drainage system. But it was not reasonably foreseeable Ms. Erickson's lot would flood. First, no subdivision could exist unless the city of Spokane approved the drainage system. *See* SPOKANE MUNICIPAL CODE 17D.060.140(C) (2010). Therefore, the respondents reasonably argue the drainage system must have been adequate for the subdivision's needs. Second, no issue with flooding surfaced until the Qualchan Hills HOA constructed the concrete extension in 2009. While the respondents might have known the drainage system would be extended as more houses were constructed, they did not know how the Qualchan Hills HOA would modify that system. Similarly, the respondents could not reasonably foresee the Qualchan Hills HOA would incorrectly extend the drainage system. Third, Ms. Erickson admitted the first time anyone suggested the drainage system on her property was inadequate was in spring 2013.

12

We now turn to Ms. Erickson's claim for continuing trespass. Periodic flooding caused by a defective drainage system has been recognized as continuing trespass. *Fradkin v. Northshore Utility Dist.*, 96 Wn. App. 118, 126, 977 P.2d 1265 (1999). "A cause of action for continuing intentional trespass . . . arises when an intrusive substance remains on a person's land, causes actual and substantial harm to that person's property, and is abatable." *Crystal Lotus Enters. Ltd.*, 167 Wn. App. at 506. "A trespass is abatable, irrespective of the permanency of any structure involved, so long as the defendant can take curative action to stop the continuing damages." *Fradkin*, 96 Wn. App. at 125-26. However, the intrusive condition must be able to be removed "without unreasonable hardship and expense." *Id.* at 126 (quoting *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1097, 51 Cal. Rptr. 2d 272 (1996)). An abatable trespass is not presumed to be permanent; there is a continuing duty to remove the intrusive condition, regardless of who created the condition. *Id.*

Because Ms. Erickson has not shown a genuine issue of material fact as to whether the respondents committed intentional trespass, her claim for continuing intentional trespass fails. *See Crystal Lotus Enters. Ltd.*, 167 Wn. App. at 502, 506; *Wallace*, 134 Wn. App. at 15-16. However, another issue with Ms. Erickson's continuing trespass claim exists. Assuming, for summary judgment purposes, the intrusive condition is the drainage as Ms. Erickson contends, no evidence exists other than Ms. Erickson's and her expert's conclusory and inconsistent statements to establish the respondents could easily and/or inexpensively alleviate the burden on her

13

property. Ms. Erickson's expert insufficiently opines the respondents could fix the problem at a reasonable cost in part because drainage was originally platted for retention on each residential lot. But Ms. Erickson's brief indicates the drainage plan terminating on her property was developed in 1992.

Moreover, Ms. Erickson fails to establish the trespass is abatable. *See Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012) ("Once the moving party meets its burden of showing there is no genuine issue of material fact, the nonmoving party must set forth specific facts rebutting the moving party's contentions."). It is easy to imagine a solution requiring extensive and expensive construction, especially given the slope was deemed unstable because drainage from the respondents' properties was seeping into it. As seen with Mr. Johnson, he had to put a considerable sum of money into an escrow account in order for his predecessor in ownership to build a retaining wall. Additionally, it could require approval from governmental bodies, further increasing the hardship on the respondents.[4]

In sum, Ms. Erickson's issue is ultimately with the defective drainage system design and the improper extension of that drainage system by the Qualchan Hills HOA.

---

[4] Both parties emphasize the respondents' respective covenants, conditions, and restrictions (CC&Rs) in arguing whether the trespass is abatable. The Bolan Avenue Respondents' CC&Rs forbid them from interfering with an established drainage pattern unless they gain the appropriate permission. The Drainage System Respondents' CC&Rs require them to adequately maintain improvements with drainage easements on their properties and forbid them from placing other structures within these easements. Again operating under the assumption the drainage is the trespass, this does create a genuine issue of material fact as to whether the respondents *could* install drainage systems on their respective properties and thus abate the trespass. But given

No. 32209-2-III
*Erickson v. Qualchan Properties, Inc.*

These individual respondents have no legal ties binding them to the Qualchan Hills HOA that make them responsible for the Qualchan Hills HOA's actions. *See Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 166 Wn. App. 683, 692, 271 P.3d 925 (2012) (a corporations' actions are not ordinarily attributable to its owners and officers).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

the lack of intent and the absence of evidence regarding whether abating the trespass would put unreasonable hardship and expense on the respondents, this is not enough.

15