[No. 42172-7-I. Division One. June 14, 1999.]

FRANK FRADKIN, *Appellant*, v. NORTHSHORE UTILITY
DISTRICT, *Respondent*.

*Koler, Rosen & Fitzsimmons, P.S.,* by *Rand L. Koler* and *Kevin Thornton Ireland,* for appellant.

*Hendricks & Hendricks,* by *Matthew R. Hendricks,* for respondent.

BECKER, J. — If a condition causing damage to land is rea-

sonably abatable, the statute of limitations does not bar an action for continuing trespass. So long as the intrusion continues, the statute of limitation serves only to limit damages to those incurred in the three-year period before the suit was filed. Here, reasonable steps are available to abate a continuing drainage problem on appellant's property caused by a utility's excavation and placement of a sewer line. And the release signed by the property owner, absolving the contractor from claims for damage to property, can reasonably be found to have settled a different problem. The order dismissing the owner's suit on summary judgment must therefore be reversed.

■ A summary judgment motion should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a grant of summary judgment, we consider the facts in the light most favorable to the nonmoving party.[1]

Northshore Utility District obtained an easement over Frank Fradkin's property authorizing excavation for a new sanitary sewer line. The easement expressly requires Northshore to restore the property to its original pre-sewer condition. R.L. Alia Company, Northshore's contractor, completed the sewer installation project in October of 1990.

When Fradkin attempted to hook his house up to the new sewer line, he discovered that during the sewer installation, Alia had accidentally cut off several drainpipes that carried runoff from the house to a nearby creek. He also noticed that his yard was wet along the sewer main. Fradkin's contractor repaired the drainpipes. Fradkin accepted a check from Alia for $2,500 after signing a release of all claims for "damage to property."

In May 1992, Fradkin contacted Northshore to complain of drainage problems in his back yard near the sewer construction site. He said his yard was not level and the grass was not growing. Northshore sent a crew consisting of an employee assisted by school-aged boys with shovels to patch up Fradkin's property.

---

[1]*Folsom v. Burger King*, 135 Wn.2d 658, 958 P.2d 301 (1998).

Another year went by and Fradkin's back yard became increasingly bog-like. In September, 1993, Fradkin complained again to Northshore. Northshore told him that his property is "naturally a wet piece of property" and that it was now in as good or better condition as before the installation of the sewer. Northshore refused to attempt further restoration. On February 7, 1994, Fradkin presented a $17,000 claim for property damage to Northshore's Board of Commissioners. The Board rejected his claim.

In 1995, at Fradkin's request, a resource specialist from the King Conservation District conducted an investigation of the drainage problem. The resulting report concluded that the "use of heavy equipment, re-use of native soils in the trench and the poor finish grading" in the sewer installation project had caused the over-saturated soil conditions found on Fradkin's property. The project had "permanently disturbed the surface and subsurface drainage patterns" and had caused the formation of several "wet areas" on the property. It was also possible, the report stated, that the initial excavation work had slickened the trench side walls, effectively sealing the normal ground and surface water into the trench areas. "The attempt to compact the native soils in the trench area with heavy vibratory equipment would also 'liquefy' this type of silty soil, creating the current muddy mess." The District recommended certain steps that could be taken to correct the problem, but Northshore's Board refused to reconsider its earlier denial of Fradkin's claim.

On May 12, 1997, Fradkin filed suit against Northshore.[2] His complaint alleged permissive waste, continuing trespass and breach of easement. Northshore successfully moved to have all claims dismissed on summary judgment as barred by the applicable statutes of limitations and by the release. Fradkin appeals.

---

[2]Alia by then was an insolvent corporation.

## PERMISSIVE WASTE

■ Under RCW 4.16.080(1),[3] Fradkin was required to bring his permissive waste claim within three years of the date of accrual. Fradkin argues that the statute of limitations did not begin to run until he received the King Conservation District report in May 1995 because it was only then that he became aware that he had a cause of action.

Under the discovery rule, a cause of action begins to accrue when a claimant knew, or in the exercise of due diligence should have known, the essential elements of the cause of action.[4] "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action."[5] Fradkin's complaint to Northshore in May, 1992, shows that at least by that time, if not earlier, he was aware of the fact of the drainage problems on his property and had identified the sewer project as the cause. The 1995 Conservation District report supplied him with useful evidence to prove the extent of his damage but it was not the critical event for accrual purposes. Because Fradkin filed his suit on May 12, 1997, more than three years after he became aware of the elements of his cause of action for permissive waste, we conclude that the trial court properly dismissed his claim.

## BREACH OF EASEMENT

■ Also dismissed as barred by the three-year statute of limitation was Fradkin's claim for breach of easement. Fradkin maintains that his action for breach of easement is an "action upon a contract in writing," and therefore governed by the six-year statute.[6] He has, however, provided neither briefing nor argument to support his position

---

[3]RCW 4.16.080 requires a plaintiff to commence an action for damage to property within three years.

[4]*In re Estate of Hibbard*, 118 Wn.2d 737, 752, 826 P.2d 690 (1992).

[5]*Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992).

[6]RCW 4.16.040(1).

against Northshore's contention that the action sounds in tort and not contract. Accordingly, we do not consider the assignment of error pertaining to the breach of easement claim.[7]

## CONTINUING TRESPASS

Fradkin further assigns error to the trial court's dismissal of his continuing trespass claim as barred by applicable statutes of limitations.

■ Northshore responds that it cannot be held responsible as a trespasser because it holds an easement granting permission to install the sewer line on Fradkin's property. But an easement does not shield the holder from an action for trespass where there is evidence of misuse, overburdening or deviation from the easement.[8] The question in any action for trespass is whether there has been an intentional or negligent intrusion onto or into the property of another,[9] or " 'an unprivileged remaining on land in another's possession.' "[10] An intentional or negligent intrusion onto the property of another that interferes with the other's right to exclusive possession is a trespass.[11] A negligent intrusion occurs "where the actor does not use reasonable care to prevent the exercise of his privilege from involving an unreasonable risk of harm to the legally protected interests of others."[12]

---

[7]*See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[8]*See Mielke v. Yellowstone Pipeline Co.*, 73 Wn. App. 621, 624, 870 P.2d 1005, *review denied*, 124 Wn.2d 1030 (1994) (placement of a pipeline outside the scope of the easement constitutes a trespass).

[9]*Id.* at 624.

[10]*Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 693, 709 P.2d 782 (1985) (quoting RESTATEMENT (SECOND) OF TORTS, § 158, cmt. m (1965)).

[11]*See Id.* at 690-91 (citing RESTATEMENT (SECOND) OF TORTS, §§ 158, 165, 166 (1965)).

[12]RESTATEMENT (SECOND) OF TORTS, § 214(1) cmt. a.

Viewing the evidence in the light most favorable to Fradkin, there is a genuine issue of material fact whether Northshore committed a trespass. By the terms of the easement, Northshore acquired only a right to install a sewer line beneath Fradkin's property. Fradkin maintained his right to exclusive possession of the surface property. With the Conservation District report as evidence that Northshore failed in its attempt to restore his lawn to its pre-sewer condition, Fradkin may be able to prove Northshore did not use reasonable care to prevent the authorized construction project from harming Fradkin's legally protected rights.

■ A claim for trespass must be brought within three years of the injury.[13] Because Fradkin sued more than six years after the initial injury, his trespass claim is barred by the statute of limitations unless it may properly be characterized as a continuing trespass. In a case of continuing trespass, "suit for damages may be brought for any damages not recovered previously and occurring within the 3-year period preceding suit."[14]

The theory of continuing trespass is illustrated by our Supreme Court's 1901 decision in *Doran v. City of Seattle*.[15] The plaintiff claimed the city had negligently erected and maintained a bulkhead in front of the plaintiff's house. Over a period of time the bulkhead slid and eventually pressed up against the house. The defendant argued that the statute of limitations began to run from the inception of the injury, and that all damages both past and future must be included in the same suit. Rejecting this approach, the court instead approved a rule permitting recoveries in such cases " 'by successive actions until the wrong or nuisance shall be terminated or abated.' "[16] It would be in-

---

[13]RCW 4.16.080(1).

[14]*Bradley*, 104 Wn.2d at 695.

[15]*Doran v. City of Seattle*, 24 Wash. 182, 64 P. 230 (1901).

[16]*Id.* at 188 (quoting *Uline v. New York Cent. & H.R.R. Co.*, 101 N.Y. 98, 4 NE 536 (1886)).

equitable, the court reasoned, to estop a person from obtaining damages "for injuries which might eventually become burdensome, because he was not litigious enough to plunge into a lawsuit over a trifling matter."[17]

Decades later, in *Bradley v. American Smelting & Refining Co.*,[18] the Supreme Court applied the theory of continuing trespass to pollution of neighboring property by airborne particulates emanating from the smelter company.[19] "Assuming that a defendant has caused actual and substantial damage to a plaintiff's property, the trespass continues until the intruding substance is removed."[20] The three-year statute of limitations runs from the date each successive cause of action accrues as manifested by actual and substantial damages.[21] The discovery rule has no application to a claim of continuing trespass. It would be inequitable, the court reasoned, to expose defendants "to claims running back for untold years when the injury many years back may have been inconsequential and the very existence of a cause of action vague and speculative."[22]

 *Bradley* and *Doran* are consistent with authority in other jurisdictions holding that the reasonable abatability of an intrusive condition is the primary characteristic that distinguishes a continuing trespass from a permanent trespass.[23] A trespass is abatable, irrespective of the permanency of any structure involved, so long as the defendant

---

[17]*Doran v. City of Seattle*, 24 Wash. at 188-89.

[18]*Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 695, 709 P.2d 782, 792-93 (1985).

[19]*Id.* at 693.

[20]*Id.*

[21]*Id.* at 692-93.

[22]*Id.* at 693.

[23]RESTATEMENT (SECOND) OF TORTS, § 162 cmt. e (1965); *see, e.g. Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1097, 912 P.2d 1220, 1226, 51 Cal. Rptr. 2d 272, 278 (1996); *Isnard v. City of Coffeyville*, 260 Kan. 2, 6-7, 917 P.2d 882, 886-87 (1996); *Jacques v. Pioneer Plastics*, 676 A.2d 504, 507-508 (Me. 1996).

can take curative action to stop the continuing damages.[24] The condition must be one that can be removed "without unreasonable hardship and expense."[25] If an encroachment is abatable, the law does not presume that such an encroachment will be permanently maintained.[26] The trespasser is under a continuing duty to remove the intrusive substance or condition.[27] Periodic flooding due to defective construction of a drainage system is a recognized fact pattern in the category of continuing trespass.[28]

The Conservation District report provides evidence that the waterlogged condition of Fradkin's property is, like the pressure of the bulkhead in *Doran* and the emission of airborne particulates in *Bradley*, abatable rather than permanent. The report recommended the installation of underdrains through the sewer drain area, the construction of a small swale, soil replacement, regrading and reseeding. Earlier, Northshore itself attempted to fix the problem by sending a crew to work on the land. From such evidence, a jury could conclude that the bog-like condition is reasonably abatable even though the sewer line itself might be viewed as a permanent structure.

Thus, it remains an issue of fact for the jury to decide whether Northshore trespassed, and, if so, whether the trespass was continuing or permanent. If the jury finds a continuing trespass, Fradkin is not time-barred from recovering damages occurring after May 12, 1994.

## RELEASE

Alia, Northshore's contractor and agent, paid Fradkin

---

[24]*See Walton v. City of Bozeman*, 179 Mont. 351, 356, 588 P.2d 518, 521 1978) (storm drain that caused continuing flooding and discharge of polluted water is a continuing trespass "because at all times, the City could have abated the nuisance by taking curative action.").

[25]*Mangini v. Aerojet-General Corp.*, 12 Cal. 4th at 1097.

[26]*Kafka v. Bozio*, 191 Cal. 746, 751, 218 P. 753, 755 (1923).

[27]*Bradley*, 104 Wn.2d at 693.

[28]*See Russo Farms, Inc., v. Vineland Bd. of Educ.*, 144 N.J. 84, 101-02, 675 A.2d 1077, 1085 (1996).

$2,500 in response to his complaint about his severed drain lines. The back of Alia's check was stamped with general release language: "Endorsement of this draft constitutes compromise, satisfaction and release of all claims, known or unknown, the undersigned has or may have against payer on account of any accident or other claim referred to on the face hereof." On the face of the check, the words "damage to property" were handwritten. The trial court ruled that Fradkin's acceptance of the check constituted a valid release of all claims relating to the property damages alleged in his complaint. Fradkin contends there is a genuine issue of material fact about the scope of the release.

The context rule applies to contract interpretation whether or not the language is ambiguous.[29] Under the context rule, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent."[30] " 'Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties.' "[31] In discerning the parties' intent, the reasonableness of the parties' respective interpretations of the written contract terms may also be a factor.[32]

Fradkin met with Northshore's inspector on February 15, 1991 to discuss the problem of the severed drainpipes. According to the inspector's notes, another meeting occurred on February 20. Fradkin's own contractor agreed to replace the drain lines, and Alia agreed to reimburse Fradkin $2,000 for the drain line repairs when complete, with

---

[29]*Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990).

[30]*Id.* at 667.

[31]*Id.* at 668 (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 212 cmt. b (1981)).

[32]*Id.* at 668.

"any further work to be done by Alia crew next week." Fradkin met with Alia and the Northshore inspector again on March 9. As documented by the inspector's notes, Alia agreed to fix Fradkin's driveway where there were soft spots over the sewer main. At this meeting Fradkin also complained that his yard was "too wet" where the sewer main went. The notes do not indicate, however, that Alia promised to do anything about the wet yard beyond reimbursing Fradkin for the cost of repairing the severed drain lines. After having his own contractor repair the severed lines, Fradkin accepted a check from Alia for $2,500.00, dated April 10, 1991.

■ A release of "all claims" is generally held to be binding upon a plaintiff who later discovers the damage caused by an injury has turned out to be greater than was originally contemplated.[33] But that rule is inapplicable here, because the language on the back of the check releasing "all claims" is limited by the phrase "damage to property" on the front of the check. With the illumination provided by extrinsic evidence, we cannot say that the parties necessarily intended the phrase "damage to property" to include anything more than the damage associated with the severed drainpipes. Severance of the drainpipes was one of two distinct acts of negligence causing damage to Fradkin's property. The other was the negligent installation of the sewer main as described in the Conservation District report. Alia did not discuss reimbursing Fradkin for anything other than the work necessary to fix the drainpipes. Fradkin accepted Alia's check for $2,500 after these repairs had been completed, at a time when the other drainage problems had only begun to be noticeable. Under these circumstances, Northshore's interpretation of the release of all claims for "damage to property" as all-encompassing is not necessarily reasonable. It is unlikely Fradkin would have settled his concern about the wet areas for a mere

---

[33]*Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 187-88, 840 P.2d 851 (1992).

$500 in excess of the original estimate for fixing the drainpipes. A fact finder could conclude that the parties intended that Fradkin release only such claims, known or unknown, as were associated with Alia's negligence in cutting off the drainpipes. Because there is a genuine issue of material fact as to the scope of the release, it was error to grant summary judgment on this basis.

The judgment dismissing Fradkin's claims is reversed as to continuing trespass, and affirmed as to permissive waste and breach of easement.

KENNEDY, C.J., and BAKER, J., concur.