SKOKOMISH INDIAN TRIBE, a
federally recognized Indian
tribe, et al., Plaintiffs,

v.

UNITED STATES of America, Tacoma
Public Utilities, a Washington munic-
ipal corporation; City of Tacoma, a
Washington municipal corporation, et
al., Defendants.

No. C99–5606FDB.

United States District Court,
W.D. Washington,
Tacoma Division.

Aug. 9, 2001.

Mason D. Morisset, Morisset, Schlosser, Ayer & Jozwiak, Seattle, WA.

Ronald B. Leighton, Gordon Thomas Honeywell, Malanca, Peterson & Daheim, Tacoma, WA.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS

BURGESS, District Judge.

## INTRODUCTION

The Plaintiffs' Complaint alleges 34 causes of action stemming from construc-tion of the Cushman Hydroelectric Project on the North Fork of the Skokomish River during the 1920s. The claims raise issues of interference with a right to fish, taking of water rights, right to hunt and gather berries, takings of land, trespass and tor-tious interference with property, unjust enrichment, conversion, public and private nuisance, negligence and negligent misrep-resentation, waste, violation of RCW 2.42.630, violation of Section 401 of the Clean Water Act, violation of Section 803(c), of the Federal Power Act. Plaintiffs seek Declaratory relief as well as damages.

By order entered June 5, 2001, this Court dismissed Counts 1–15, 20, 22, 27, 30, and 35; these counts generally con-cerned treaty rights, which the Court con-cluded have been conditioned to the extent necessary to accommodate the Cushman Hydroelectric Project. Fourteen causes of action remain, two of which are federal claims: Count 16, a claim under 803(c) of the Federal Power Act; and Count 34, a Clean Water Act claim. The claims re-maining are as follows: 16–19, 21, 23–26, 29, (there is no claim 28) 31–34.

Defendants move for summary judg-ment on the remaining claims. Plaintiffs resist this motion and also move for partial summary judgment on their state claims of inverse condemnation (claim 17), trespass (claim 18), tortious interference with prop-erty (claim 19), negligence (claims 23–25), private nuisance (claim 31), and public nui-sance (claim 32).

## DISCUSSION

**Claim 16: Violation of 16 U.S.C. § 803(c)**

■ The federal claims will be discussed first, beginning with the claim pursuant to Section 803(c). The 803(c) provision con-cerns maintenance and repair of project works and exempts the United States from

liability while stating that licensees will be liable for damage to the property of others occasioned by the construction, maintenance, or operation of the project works. The plaintiff claim that "Tacoma's construction, maintenance, and operation of the Cushman Project and its appurtenant or accessory works has caused damage to Plaintiffs' property and other legal interests." (Plaintiffs' Complaint, Claim 16, ¶ 272)

In *DiLaura v. Power Authority of State of NY*, 982 F.2d 73 (2nd Cir.1992), plaintiffs who owned land on the Niagara River sued the Power Authority of the State of New York (PASNY) for damages and injunctive relief resulting from PASNY's ice control procedures on the River. Plaintiffs argued that 16 U.S.C. § 803(c) created a private claim and that, therefore, the district court had subject matter jurisdiction over their claim for compensatory and punitive damages and injunctive relief. The Court addressed the matter of whether Congress intended to create such a right of action by applying the four-part test from *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which it noted had been "refocused" to emphasize the centrality of the factor of Congressional intent with the remaining factors serving as "proxies for legislative intent." *DiLaura* 982 F.2d at 77–78. The Court concluded

> There is nothing in the legislative history to contradict the district court's assertion that "Congress simply wanted to preserve the right of injured property owners to bring actions for damage against licensees in state court under traditional state tort law, and to shield the United States against liability." 786 F.Supp. at 249

*Id.* at 78. The Court then noted that most courts considering the issue have concluded that § 803(c) does not create an independent federal cause of action but simply preserves existing state tort law with its own rules of liability for damages caused by licensees. *Id.* Plaintiffs cite *Dalrymple v. Grand River Dam Authority*, 932 F.Supp. 1311, 1314 (N.D.Okla.1996), *aff'd in part, dismissed in part*, 145 F.3d 1180 (10th Cir.1998) as stating that Section 803(c) "squarely plac[es] potential liability on licensees. . . ." This case does not help Plaintiffs, as it merely states the obvious— that liability is upon the licensees, and not the United States—and does no analysis of the issue of whether this section was intended to create an independent basis for federal jurisdiction. Moreover, *Dalrymple* was removed from state court where it brought claims for inverse condemnation, consequential damage to private property, trespass, and nuisance, *inter alia*. The 10th Circuit concluded that it was precluded from reviewing the District Court's remand order, as it was based to a fair degree upon a finding that it lacked subject matter jurisdiction over the claims. The Grand River Dam Authority asserted entitlement to immunity pursuant to Section 803(c) as it was essentially an agent of the United States because it operated the dam and reservoir on navigable waters subject to the Commerce Clause and pursuant to the terms and conditions of its FERC license and Corps of Engineers directive during flood stage. The Court of Appeals noted that the District Court remanded the matter because there was no basis for removal pursuant to Section 1441(a) & (b), there being no federal right or immunity implicated in the plaintiffs' complaint nor pursuant to 1442(a)(1), for an officer or agency of the United States. 145 F.3d at 1185. Therefore, as it did in its earlier Order, this Court adopts the analysis of *DiLaura*. Accordingly, Section 803(c) does not provide a separate basis for a cause of action, and this claim must be dismissed for failure to state a claim upon which relief could be granted.

**Claim 34: Violation of Section 401 Certification**

██ In this claim, Plaintiffs allege that Tacoma has failed to comply with conditions contained in the Section 401 certification under the Clean Water Act (CWA). (Presumably, although the Complaint does not state to which statute Section 401 refers). One of the conditions asserted was a failure to complete a study of the effect of additional flows from the North Fork on the main stem, periodic flushing flows, and monitoring. There are several problems with this claim.

First, this section of the CWA provides for citizen lawsuits against any person or government instrumentality who is alleged to be in violation of "an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). In alleging violation of a condition concerning with North Fork water flow, the Complaint does not allege any such violation of an effluent standard.

Second, the notice requirements of 33 U.S.C. § 1365(b) apparently have not been observed. A citizen suing under this section must give 60 days notice to the Administrator, to the State in which the alleged violation occurs, and to the alleged violator before filing suit.

██ Third, the language of this section—"alleged to be in violation"—requires a continuous or intermittent violation and does not confer federal jurisdiction over citizen suits for wholly past violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 57–66, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

██ Fourth, the remedy provided by 33 U.S.C. § 1365(a) is enforcement of the effluent standard or limitation, not damages.

Plaintiffs have not made any response to these infirmities. This claim must be dismissed.

**Claims against Individual Board Members**

██ Defendants contend that the individual Tacoma Public Utility Board Members—William Barker, Tom Hilyard, Robert Lane, Tim Strege, and G.E. Vaughn—who were named in their official capacities, should be dismissed pursuant to RCW 35.21.415:

> [o]fficials and employees of cities and towns shall be immune from civil liability for mistakes and errors of judgment in the good faith performance of acts within the scope of their official duties involving the exercise of judgment and discretion which relate solely to their responsibilities for electrical utilities.

Plaintiffs have responded with no contrary authority other than to defend the rationale for including the individual Board members in this lawsuit. Therefore, the individual Tacoma Public Utility Board Members named in this lawsuit are dismissed.

**State Law Claims**

The remaining claims based on state law are as follows: 17, inverse condemnation; 18, trespass; 19, tortious interference with property; 21, conversion; 23–26, negligence; 29, negligent misrepresentation; 31–32, private and public nuisance; 33, violation of RCW 4.24.630.

██ The applicable state statute of limitations for these claims are ten years for inverse condemnation, *Highline School Dist. v. Port of Seattle*, 87 Wash.2d 6, 11, 548 P.2d 1085 (1976), three years for trespass, fraud, negligence, conversion, and tortious interference, RCW 4.16.080, and two years for nuisance. *Riblet v. Spokane–Portland Cement Co.*, 41 Wash.2d 249, 257–58, 248 P.2d 380 (1952). The Indian Claims Limitation Act (ICLA), 28 U.S.C. § 2415, may apply as well, but Plaintiffs must have preserved their claims

by submission to the Secretary of the Department of the Interior. It appears that the Cushman Dam fishery damage claim was so preserved, but treaty based fishery damage claims were dismissed in the Court's earlier order.

■ The alleged harms surviving the Court's earlier order granting partial summary judgment, are flooding or elevated water tables affecting property on the reservation. These harms began accruing in the 1920s when the Cushman Project began.

Plaintiffs argue that aggradation-related damages, which, they state was clearly present on the reservation at the Highway 101 bridge in the 1950s was not known then, nor should it have reasonably been known, that the Cushman Project was the cause. Plaintiffs assert that their aggradation-related claims accrued in 1996 when they learned that the Cushman project was the primary cause of the aggradation. Plaintiffs point to studies conducted by the U.S. Forest Service and Simpson Timber Company in 1995 and 1996, respectively, that showed that logging in the South Fork watershed alone did not cause the aggradation on the Skokomish mainstem. (Plaintiff's memo. P. 9 and citations therein.) Thus, argue the Plaintiffs, under the ICLA, the trespass and conversion actions must have been commenced within six years and 90 days after the date of accrual, and the other tort actions must have been brought within three years after accrual.

■ Additionally, Plaintiffs argue that the state statutes of limitation do not bar their state claims because of the "continuing wrong" doctrine. (Plaintiffs' memo. P. 13–15 and citations therein.) Alternatively, Plaintiffs argue that their claims were preserved through equitable tolling because of wrongful conduct by the United States (owing to conflicts of interest and bureaucratic red tape) in failing to represent the Tribe in its efforts to sue the City of Tacoma.

The evidence shows, however, that the Plaintiffs' aggradation-related claims accrued *at least* by February 16, 1989. That is the date when Russell Busch, attorney for the Skokomish Indian Tribe wrote a letter to Gary Hansen at the Washington Department of Ecology with reference to permits sought by the City of Tacoma in the Skokomish River Basin. The letter stated in pertinent part:

The Skokomish Tribe resides upon a federal Indian Reservation on the Skokomish River downstream from the Applicant's diversions and impoundments. It is the position of the Tribe that the Applicant's action reduce the natural flow of the river in such a way that: (1) Indian treaty fisheries are seriously reduced both on the Reservation and at other usual and accustomed places, in violation of the Treaty of Point no Point; (2) the federal reserved water rights of the Skokomish Reservation are unlawfully interfered with; and (3) **the reduction of tributary inflow caused by Tacoma's impoundments and diversions is a direct and proximate cause of channel aggradation and flooding on [and] above the reservation.**

(Ex. 1 to Ashcraft decl.; emphasis added.)

The continuing tort doctrine fails in this instance because as to some of Plaintiffs' causes of action, the permanent nature of the damages alleged precludes application of the doctrine. *Fradkin v. Northshore Utility Dist.*, 96 Wash.App. 118, 123–26, 977 P.2d 1265 (1999). The manner in which Plaintiffs have calculated their damages indicates the permanent nature of the damages: they estimate the damages by "determining the market value of each property in its 'before' and 'after' condition." This type of damage calculation is only appropriate when the alleged dam-

ages are permanent. *Miotke v. City of Spokane,* 101 Wash.2d 307, 332, 678 P.2d 803 (1984). Future remediation damages, which Plaintiffs seek as well, are recoverable only for alleged permanent damage. *See Fradkin,* 96 Wash.App. at 124–25, 977 P.2d 1265, citing *Doran v. City of Seattle,* 24 Wash. 182, 188 64 P. 230 (1901). The alleged damages are also not reasonably abatable without unreasonable hardship and expense, and is, thus, another indicator of the damages' permanency. *See Id.* at 126, 977 P.2d 1265.

■ As to the equitable tolling issue, the Plaintiffs describe action by the United States, rather than action by the City of Tacoma, which alleged actions cannot form the basis for tolling against the City of Tacoma.

The remaining state law claims, must, therefore, be dismissed, this cause of action having been filed November 19, 1999, well past the longest limitation period of ten years.

### CONCLUSION

The remaining federal claims must be dismissed. Section 803(c) does not provide a separate basis for a cause of action, and therefore, Claim 16 must be dismissed or failure to state a claim upon which relief could be granted. Claim 34 alleging violation of Section 401 of the Clean Water Act must be dismissed for failure, *inter alia,* to make an allegation cognizable under this section.

The individual defendants, who are members of the Tacoma Public Utility Board must dismissed as they are immune pursuant to RCW 35.21.415.

The remaining state law claims must be dismissed as they are beyond the limitations period for such lawsuits.

These conclusions dispose of the remaining motions as well.

NOW, THEREFORE, IT IS ORDERED:

(1) Defendant's Motion for Summary Judgment on All Remaining Claims (Doc. # 136) is GRANTED, and all remaining claims against the Defendants, including the individual defendants, are DISMISSED with prejudice;

(2) Plaintiffs' Motion for Partial Summary Judgment (Doc. # 128) is DENIED;

(3) Defendant's Motion to Strike (Doc. # 142) is stricken as MOOT;

(4) Plaintiffs' Motion to Strike (Doc. # 154) is stricken as MOOT;

(5) Requests for Oral Argument are DENIED;

(6) This Order having disposed of the remaining claims in this case, this cause of action is DISMISSED and the Clerk of the Court may enter final judgment.