GRABER, Circuit Judge,
with whom PREGERSON, PAEZ, and BERZON, Circuit Judges, join, concurring in part and dissenting in part:
I concur in the majority opinion with two exceptions. First, with respect to the right of individual members of the Tribe to bring a § 1983 claim against the City and TPU, I agree with Judge Berzon’s dissent at pages 1002-04. Second, I disagree with the majority’s conclusion that the statute of limitations has run on the Tribe’s Washington-law claims for nuisance and trespass. Under Washington law, even a permanent structure (like a dam or a sewer) can result in a “continuing” nuisance or trespass. If there is a “continuing” nuisance or trespass, then the plaintiff can seek damages for the three years immediately preceding the filing of the complaint, because the act for which damages are sought is a present, ongoing act rather than a past, completed act. Here, a question of fact remains concerning the proper application of the statute of limitations.
Under Washington law the difference between a “permanent” nuisance or trespass and a “continuing” nuisance or trespass is that the latter is “reasonably abatable,” that is, the defendant can take curative action to stop the continuing-damages. 16 Wash. Prac., Tort Law and Practice § 9.13 (2d ed.). The question of “permanent” versus “continuing” nuisance or trespass is separate from the question of damages or remediation of consequential harms, even though money is involved in each analysis. For example, a trespass can cause huge damages but be very cheap to fix, or vice versa.
*994 The Tribe has produced sufficient evidence to raise a genuine issue of material fact as to whether the aggradation allegedly caused by the Cushman Dam Project’s diversion of the North'Fork of the Sko-komish River is reasonably abatable. To survive summary judgment, the Tribe had to produce evidence from which a rational finder of fact could conclude that the ag-gradation of the Skokomish River’s main-stem can be abated “without unreasonable hardship ■ and expense.” Fradkin v. Northshore Util. Dist., 96 Wash.App. 118, 977 P.2d 1265, 1270 (1999).
Two pieces of evidence support the Tribe’s claim that the aggradation is reasonably abatable. First, at least two of the Tribe’s technical consultants stated that aggradation can be abated by dredging the river or decreasing the amount of water ■ diverted away from the North Fork.[1] Second, Tacoma’s 1998 license from FERC directed it to develop “specific cost-effective measures , proposed to increase the channel conveyance capacity” of the Skokomish mainstem, including “flow manipulation [and] flushing flows.”
The FERC order supports the Tribe’s showing, for summary judgment purposes, that these measures to abate aggradation would be feasible. In Fradkin, the court held that summary judgment was improper where the plaintiff had produced a report recommending certain measures to remedy the condition (and where the trespassing utility had itself attempted to fix the problem). Id. The court did not discuss the cost of such measures or the value of the plaintiffs property in relation to these measures. Id. In Jacques v. Pioneer Plastics, Inc., 676 A.2d 504 (Me.1996) (cited in Fradkin, 977 P.2d at 1270 n. 23), a document even more similar to the FERC order sufficed to raise a genuine issue of material fact: a compliance order from a state agency that directed the contaminating parties to submit a remediation feasibility study. Id. at 508. Several courts have noted that abatability is not necessarily a return to the status quo ante or a complete elimination of the problem. See, e.g., Mangini v. Aerojet-Gen. Corp., 12 Cal.4th 1087, 51 Cal.Rptr.2d 272, 912 P.2d 1220, 1226 (1996) (“something less than total decontamination may suffice to show abatability”) (cited in Fradkin, 977 P.2d at 1270 n. 23); Beck Dev. Co. v. S. Pac. Transp. Co., 44 Cal.App.4th 1160, 52 Cal.Rptr.2d 518, 558 (1996) (noting that “the ability to remediate to levels demanded by the regulatory agencies was sufficient abatability”); Hanes v. Cont’l Grain Co., 58 S.W.3d 1, 4 (2001) (“We disagree ... that in order to show a nuisance can be abated, it must be shown that the entire nuisance can be eliminated, and a reduction or lessening of the nuisance is insufficient. ... A nuisance can be abated to the degree where it is no longer a substantial interference.”).
There is evidence in the record from which a reasonable finder of fact could *995 conclude that abatement of the aggradation itself is economically feasible. The 1998 FERC license states that the “cost-effective” measures to increase mainstem conveyance capacity are not to exceed $5 million. For summary judgment purposes we should presume that FERC considered the reasonableness of this sum, as well as the feasibility of the measures, in relation to the economic situation of the City and the Cushman Dam Project. For this reason, I believe that, for summary judgment purposes under Washington law, the FERC order is sufficient evidence that abatement of mainstem aggradation could be economically feasible.
The majority, in contrast, concludes that abatement is unreasonable as a matter of law, because the cost of remediating the damage to property caused by the aggra-dation and associated flooding is about 75 percent more than the value of the Tribe’s property in its prior condition. Maj. op. at 992. I do not agree that this price tag renders the condition unabatable as a matter of law. Moreover, the cited estimate of remediation costs is primarily for repairs to sewer and water-delivery systems and to flood-damaged homes. It does not address the perhaps much lower cost to abate the aggradation itself, by way of dredging or flushing flows. The aggradation is the underlying condition caused by the diversion of water by the Cushman Project and it should be the focus of the abatability inquiry.[2]
In conclusion, I am persuaded that the Tribe’s state-law claims for nuisance and trespass survive summary judgment on statute of limitations grounds.[3] I respectfully dissent from the majority’s contrary conclusion.

. One technical analyst opined:
Flushing flow releases from Cushman would be more effective in transporting sediment through the mainstem Skokomish if the mainstem channel was made deeper through dredging.... Restoration of the natural sediment transport capacity of the river would lessen, halt or possibly even reverse the current trends in aggradation. At the very least, it would address the portion of the aggradation problem attributable to the Cushman Project.
Another concluded:
Restoring and maintaining a mainstem conveyance capacity of 13,000 cfs will contain the 1.3-year flow event within the banks of the channel. This will afford the Tribe the same level of flood protection, in terms of the probability and frequency of overbank flow, that existed under natural conditions. This will protect approximately 1,400 acres of Reservation lands from the effects of frequent flooding.

. Cf. Castaic Lake Water Agency v. Whittaker Corp., 272 F.Supp.2d 1053, 1072 (C.D.Cal.2003) (holding that deposition testimony regarding a $36 million treatment program for drinking water affected by contamination did not support the plaintiff's claim of abatability because the treatment facility would not abate "the actual nuisance-namely, the underground contamination").

. I have not considered, and express no opinion on, the City's alternative arguments for granting summary judgment on the merits of the Tribe's trespass and nuisance claims.