# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| VERNON PAUL VANCE, | ) | NO. 73632-9-I |
| Appellant, | ) ) | |
| v. | ) ) ) | DIVISION ONE |
| PIERCE COUNTY, a governmental subdivision of the State of Washington; PIERCE COUNTY SHERIFF'S DEPARTMENT, a subdivision of the State of Washington; WASHINGTON STATE DEPARTMENT OF CORRECTIONS, a Department of the State of Washington, WASHINGTON STATE PATROL, a department of the State of Washington, | ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: October 5, 2015 |

LAU, J. — Vernon Vance appeals summary judgment dismissal of various causes of action he alleged against employees of Pierce County and Washington State after he was mistakenly required to register as a kidnap offender. He argues the trial court erred when it concluded that his claims were barred either by the statute of limitations or by some form of immunity. Because most of his claims are barred by the statute of

limitations, neither equitable tolling nor the continuing tort doctrine applies, prosecutorial immunity applies to bar his malicious prosecution and false arrest claims, and he fails to establish a prima facie case of defamation, we affirm the trial court's order dismissing Vance's claims on summary judgment.

## FACTS

The facts here are viewed in Vance's favor. In 1989, Vernon Vance pleaded guilty to one count of first degree kidnapping, one count of third degree aggravated robbery, and one count of second degree burglary in La Plata County District Court in Colorado. Vance served nine years in prison and transferred his parole to Washington State under the interstate compact agreement.

On February 26, 1998, Vance met with Department of Corrections (DOC) Community Corrections Officer Bill Frank. Frank informed Vance that he was required to register with the Pierce County Sheriff's Department (PCSD) as a kidnap offender under the community protection act.[1] Frank determined the registration requirement under the act applied to Vance based on documents provided by Colorado authorities indicating Vance kidnapped a 15-year-old boy. For example, a Colorado Department of Corrections Community Release Form states that "Vance entered the home of the Pine

---

[1] The community protection act requires individuals convicted of a sex offense or kidnapping offense to register certain information with the local sheriff's office. RCW 9A.44.130(1)(a) ("Any adult or juvenile . . . who has been found to have committed or has been convicted of any sex offense or kidnapping offense, shall register with the county sheriff for the county of the person's residence . . . ."). This registration requirement only applies to kidnapping offenders when the victim is a minor: "For the purposes of RCW 9A.44.130 . . . 'Kidnapping offense' means . . . [t]he crimes of kidnapping in the first degree, kidnapping in the second degree, and unlawful imprisonment . . . where the victim is a minor and the offender is not the minor's parent." RCW 9A.44.128, 9A.44.128(8)(a) (emphasis added).

Valley Bank President and took his 15 year old son hostage . . . ." Clerk's Papers (CP)

at 151. Similarly, the presentence report from Colorado indicates that Vance kidnapped

a 15-year-old victim:

> The suspect [Vance] then ordered [James] Sower, his wife, Beth, and fifteen year old son, [L.S.], to lie down, face down on the floor . . . The suspect stayed in the Sower home for approximately two hours and then tied up [L.S.], took him to the garage and told him to get into the trunk of the Sower's automobile. [L.S.] did as he was told and was driven to a remote area near Ignacio, Colorado, where the car was abandoned and later discovered by Ignacio Police Officers, who found [L.S.] in the trunk of the car unharmed.

CP at 159. The presentence report also contains a statement from Vance admitting that

he kidnapped L.S.: "I had to take their family car and son for safe passage to Ignacio. I

told Mr. and Mrs. Sower that they could pick up their son and car on the other side of

Ignacio by Bondad road." CP at 160. L.S. provided a victim statement describing the

incident:

> This is my statement about what happened on the night I was kidnapped. Many of the details are clear but I was so terrified, it is hard for me to explain how I felt.
> When Dad opened the door and was confronted by a masked gunman, all I could see was the barrel of the gun pointed at my mother and I.
>   . . .
> When he decided to leave, he wouldn't leave by himself. He said he was going to take me with him. I was scared, I didn't want to leave my Dad and Mother, because I didn't know what would happen to me.
>   . . .
> I was real scared and didn't want to go, but I did what he told me to do . . . He opened the trunk and ordered me to get into the trunk. I saw his face and mask and it scared me. He shut the trunk lid on me. It was dark and I was terrified.

CP at 166.

Vance's Colorado plea statement shows that Vance pleaded guilty to one count of kidnapping an adult—James Sower, L.S.'s father. CP at 466 ("I, the defendant . . . forcibly seized and carried any person, to wit: <u>James Sower</u>, from one place to another . . . ." (emphasis added)). But Vance's plea statement was not included in the 19 documents Colorado provided to the DOC. Vance did not disagree with Frank at that time because he "believed that Washington law required all violent offenders to register." CP at 455. Vance signed an acknowledgment of his parole conditions that included his obligation to register.[2]

Vance went to the Pierce County Sheriff's Department (PCSD) where he completed and signed the "Sex and Kidnapping Offender Registration" form. CP at 219. The PCSD also provided Vance with information regarding his registration requirements. It included a document stating that Vance could petition Thurston County Superior Court to relieve him of the duty to register. The PCSD forwarded Vance's registration information to the Washington State Patrol (WSP). The WSP maintains a statewide database of registered offenders as required by statute.

Shortly after he registered as a kidnap offender on February 26, 1998, Vance claims he disputed his registration requirement:

> I again met with CCO [Community Correction Officer] Bill Frank and contested the sex offender registration requirement. I continued to contest the registration requirement with DOC from that day forward, and with each of the CCOs that were assigned to me. I informed my CCOs that I was not convicted of kidnapping a minor. I was repeatedly informed by DOC officers, including Mr. Frank, that I should not "rock the boat" in regards to my registration requirement.

---

[2] The parties now agree that Vance never had a duty to register and was registered in error.

> Mr. Frank informed me that I had just been released from prison and my freedom was much more important than having to register as a sex offender. Mr. Frank informed me that if I "rocked the boat" regarding my registration, my parole would be revoked and I would be sent back to prison in Colorado.

CP at 455-56. Vance also claims that Frank and a DOC officer told him that an out-of-state parolee cannot request to lift the registration requirement. He is "stuck" with the requirement forever. CP at 456. Frank denies any memory of this conversation:

> I do not have an independent memory of any interactions with him as it has been nearly 15 years since he was on my caseload. It is my understanding that Mr. Vance is claiming that he told me in 1998 that he should not have to register. While I do not recall this interaction, if it did occur, it would have been my practice to tell Mr. Vance that DOC is not able to relieve any offender of the duty to register and that this issue would need to be raised with the Pierce County Sheriff's Office and/or the court system.

CP 137.

In May 2000, Vance sought legal assistance for the first time. He consulted with attorney Amy Hansen regarding the registration requirement. Hansen told Vance to retain counsel in Colorado to modify his sentence. Vance took no further action to remove his registration requirement until 2008.

On May 14, 2008, Vance went to the PCSD to challenge the registration requirement. He presented his conviction records to PCSD employee GayLynn Wilke. He asserts that she declined to consider his records. Vance claims PCSD forced him to sign a change of address form for kidnapping offenders. He argued with PCSD employees over whether the registration requirement applied to him. He claims PCSD employees threatened him with reincarceration if he did not register. He further claims

-5-

that PCSD employees called in uniformed officers to assist with the registration process. Vance signed the change of address form "under duress."[3] CP at 237.

That same day, Wilke e-mailed Virginia Shamberg at the DOC inquiring about Vance's conviction:

> Vernon Vance . . . registered with the Pierce County Sheriff's Department back in 1998, and I believe he may have been registered in error . . . I need to know if there was a finding of sexual motivation or if the victim of the Kidnap was a minor.

CP at 255 (emphasis added). Wilke took no further action after this e-mail.

On October 23, 2008, Vance discovered he was listed on the PCSD's website as a registered sex/kidnap offender. Vance talked to Craig Adams, Pierce County deputy prosecuting attorney and PCSD's legal advisor. Adams informed Vance that his only option was to petition Thurston County Superior Court. On October 25, Vance sent Adams a letter challenging his registration requirement. He also sent the letter to the WSP. He included copies of his conviction documents and his guilty plea statement. On November 17, Adams requested information regarding Vance's conviction from the La Plata County District Attorney in Colorado. In December 2008, Adams received several documents from Colorado: (1) a copy of the affidavit for Vance's arrest warrant, (2) a copy of the judgment and sentence, and (3) a copy of the presentence report. These were the same documents the DOC received from Colorado in 1998. In November

---

[3] The record is unclear as to which employee argued with Vance. In Vance's declaration, he claims he argued with GayLynn Wilke. In response to an interrogatory, however, Vance claims he argued with Andrea Shaw. In both cases the sequence of events is the same: he goes to the PCSD to contest his registration requirement, he argues with employees about the registration requirement, one of those employees threatens Vance with prosecution and calls in uniformed officers, and Vance finally signs the address change form "under duress."

-6-

2009, nearly one year later, Adams sent a letter to the La Plata County District Attorney stating that the documents were ambiguous as to whether Vance kidnapped a minor or an adult:

> Specifically, those records appear to show that Mr. Vance kidnapped a 15 year old son of a local bank president. But, the various records seemingly refer to him having kidnapped the bank president and not the son . . . My reading of the facts and police reports indicate that Mr. Vance, in fact, kidnapped the son to extort money from the father. Yet, the court documents are confusing relative to the names used in this regard.
>
> Again, I ask if you could provide court documents or anything which would, in fact, clarify who was kidnapped.

CP at 409. Adams received no response and assumed that his initial assessment was correct—Vance was required to register because he had kidnapped a minor.

Vance, meanwhile, contacted at least two other attorneys about his registration problem. Shortly after Adams told Vance that his only option was to file a petition in Thurston County, Vance met with George Steel, an attorney in Thurston County. Steele told Vance that no statutory relief was available to him because the statutory relief applied only to individuals who had a statutory duty to register. RCW 9A.44.142 states that only "[a] person who is required to register under RCW 9A.44.130 may petition the superior court to be relieved of the duty to register." RCW 9A.44.142(1) (emphasis added).[4]

In early 2010, Vance noticed his photograph appeared on the PCSD sex offender website. He retained attorney Frederick Hetter to write a letter to Adams. Adams did not respond.

---

[4] The record is silent on why Vance did not pursue other available relief such as a declaratory judgment or injunction.

In February 2012, Pierce County charged Vance with failing to register as a sex offender. On February 21, Vance was summoned to court, handcuffed, and taken into custody. He was detained for less than 24 hours and released after posting bail. Pierce County Deputy Prosecuting Attorney Jessica Giner exchanged e-mails with Vance's criminal attorney. During this e-mail exchange, Giner reviewed all of the PCSD documents relating to Vance. On April 24, 2012, Pierce County dismissed the criminal charge against Vance after determining he kidnapped an adult, not a minor. PCSD removed Vance from the registry, noting that "the kidnapping of a minor charge was dismissed and the kidnapping conviction was an adult victim." CP at 185.

In December 2012, Vance sued Pierce County, the PCSD, and several individuals.[5] In September 2013, Vance filed his second amended complaint, naming the WSP and the DOC as additional defendants. Vance alleged nine causes of action: false arrest and malicious prosecution (Pierce County only); defamation; gross negligence and deliberate indifference; negligent hiring, retention, and supervision (Pierce County only); negligent infliction of emotional distress; negligence; outrage; invasion of privacy.

All the defendants successfully moved for summary judgment of dismissal, arguing Vance's claims were barred either by the statute of limitations or some form of immunity. In its oral ruling, the trial court stated that either the statute of limitations or immunity applied to all of Vance's claims. Vance appeals.

---

[5] The individual defendants were dismissed and are not party to this appeal.

ANALYSIS

Standard of Review

This court reviews summary judgment orders de novo, engaging in the same inquiry as the trial court. Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003). Summary judgment is proper if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Michak, 148 Wn.2d at 794-95.

Statute of Limitations

Most of Vance's claims are barred by the two or three-year[6] statute of limitations—gross negligence and deliberate indifference; negligent hiring, retention, and supervision (Pierce County only); negligent infliction of emotional distress; negligence; outrage; invasion of privacy.[7] Vance concedes that he filed these claims beyond the statute of limitations. He contends his claims are nevertheless timely because either (1) the statute of limitations should be equitably tolled, or (2) his claims are subject to the continuing torts doctrine. We disagree.

Equitable Tolling

When justice requires, a trial court may toll the statute of limitations, but courts should permit equitable tolling only sparingly. State v. Duvall, 86 Wn. App. 871, 875, 940 P.2d 671 (1997). A party seeking equitable tolling must show (1) bad faith,

---

[6] There is no genuine material dispute that February 26, 1998, the date Vance registered as a kidnapping offender, is the triggering event giving rise to his claims.

[7] We address Vance's remaining claims for malicious prosecution, false arrest, and defamation below.

deception, or false assurances by the defendant and (2) the exercise of diligence by the plaintiff. Millay v. Cam, 135 Wn.2d 193, 206, 955 P.2d 791 (1998).

Even if we assume, without deciding, that the defendants here acted in bad faith or provided false assurances, Vance shows no exercise of diligence. The undisputed timeline of events reveals that Vance took almost no action to pursue relief for over ten years. Vance registered in 1998. Even though he questioned his duty to register at the time and was told about possible remedies, he did nothing to seek a remedy. In 2000, he failed to act on attorney Hansen's advice to contact a Colorado attorney for legal assistance.[8] From 2000 to 2008, the undisputed record indicates no action by Vance to dispute his duty to register during this 8-year period.

In early 2008, he went to the PCSD to dispute his duty to register. In October 2008, Vance contacted Craig Adams at Pierce County demanding that he be removed from the sex/kidnap offender website. Shortly after this, an attorney told Vance that relief under RCW 9A.44.142 was not available to him.

On November 13, 2008, for the first time, Vance pursued civil damages. He filed a tort claim against Pierce County, a statutory prerequisite to a lawsuit. RCW 4.96.020. His claim demanded damages for his erroneous registration as a kidnapping offender. Instead of filing a lawsuit, two years later in 2010, his attorney contacted Adams about

---

[8] Vance cites State v. Littlefair, 112 Wn. App. 749, 51 P.3d 116 (2002) to support his argument that the court should grant equitable tolling because third parties—the attorneys he consulted—provided inaccurate advice. In Littlefair, the court granted equitable tolling because a "series of mistakes by his attorney, the court, and arguably INS" led to a failure to notify a defendant that deportation was a consequence of a guilty plea. Littlefair, 112 Wn. App. at 762. Unlike Vance, the defendant in that case acted diligently by filing his motion soon after he discovered the error. Littlefair, 112 Wn. App. at 763. Even after receiving the advice from Hansen and other attorneys, Vance did not follow that advice.

-10-

the addition of Vance's photograph to the offender registration website. He did nothing else until late 2012 when he filed his lawsuit. During discovery, Vance admitted that he never sought relief in any court and no defendant prevented him from doing so.

Vance excuses his lack of due diligence by claiming threats and deception by the defendants prevented him from pursuing his claims in court. This assertion raises no material issues of fact. Despite the alleged threats and deception, Vance filed his tort claim against Pierce County in 2008. He delayed four more years before filing his 2012 lawsuit. Vance's reliance on equitable tolling fails.

Continuing Tort Doctrine

Vance also argues that the continuing tort doctrine applies to his claims. When a tort is continuing, the "statute of limitations runs from the date each successive cause of action accrues as manifested by actual and substantial damages." Fradkin v. Northshore Utility Dist., 96 Wn. App. 118, 125, 977 P.2d 1265 (1999). But no Washington court has applied the continuing tort doctrine outside of property claims (trespass, nuisance, etc.) and employment discrimination claims. See, e.g., Pacific Sound Resources v. Burlington Northern Santa Fe Ry. Corp., 130 Wn. App. 926, 125 P.3d 981 (2005) (nuisance, trespass), Antonius v. King County, 153 Wn.2d 256, 103 P.3d 729 (2004) (employment discrimination). Courts have expressly declined to extend the continuing tort doctrine beyond these contexts. Cox v. Oasis Physical Therapy, PLLC, 153 Wn. App. 176, 192, 222 P.3d 119 (2009) ("Ms. Cox has not shown the continuing violation doctrine applies to negligence claims, as opposed to discrimination claims. We decline to extend this doctrine beyond discrimination claims."). We decline to extend the continuing tort doctrine to the facts presented here.

Further, even when a tort arguably constitutes a continuing tort, courts will not allow the suit to continue if the plaintiff fails to show successive manifestations of "actual and substantial damages." Fradkin, 96 Wn. App. at 125. For instance, in Pacific Sound Resources, an arguably continuing trespass and nuisance action was still barred by the statute of limitations because the plaintiff's actual damages accrued long before they filed their lawsuit. Pacific Sound Resources, 130 Wn. App. at 942 ("there were known actual and substantial damages well over three years before [plaintiffs] filed the lawsuit . . . Under these circumstances, the common law tort claims accrued more than three years before [the plaintiffs] filed their lawsuit . . ."). Likewise, even if Vance's claims constitute "continuing" torts, he demonstrates no successive manifestation of actual damages.

Absolute Prosecutorial Immunity

We next address Vance's claims against Pierce County for malicious prosecution and false arrest. We conclude that absolute prosecutorial immunity bars these claims.

A prosecutor who acts within the scope of his or her duties in initiating and pursuing a criminal prosecution is absolutely immune from liability. Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). This immunity extends to the local government employing the prosecutor. Kentucky v. Graham, 473 U.S. 159, 167–68, 105 S. Ct 3099, 87 L. Ed. 2d 114 (1985); see also Tanner v. City of Federal Way, 100 Wn. App. 1, 6, 997 P.2d 932 (2000). Absolute immunity bars Vance's claims for malicious prosecution and false arrest because those claims arise from the prosecuting attorney's acts executed within the scope of her duties in initiating and pursuing a criminal prosecution.

-12-

Nor is the deputy prosecuting attorney here liable as a complaining witness under the rule in Kalina v. Fletcher, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997). Vance argues the prosecuting attorney acted as a complaining witness when she signed the declaration for determination of probable cause. We disagree. Unlike in Kalina, the prosecutor here did not "personally [vouch] for the truth of the facts set forth in the certification under penalty of perjury." Kalina, 522 U.S. at 121. Here, the record shows the deputy prosecuting attorney relied on the police report prepared by the Pierce County Sheriff. This claim fails.

Defamation

Pierce County concedes that Vance's defamation claim may be timely under the applicable statute of limitations. We nevertheless conclude that summary judgment dismissal of Vance's defamation claim was proper because the defamatory statements at issue were made by government officials pursuant to their official duties.[9]

A successful defamation claim requires (1) a false and defamatory communication, (2) lack of privilege, (3) fault, and (4) damages. Sisley v. Seattle Public Schools, 180 Wn. App. 83, 87, 321 P.3d 276 (2014). Vance cannot show a lack of privilege here because defendants are inferior state officers who published the defamatory statements pursuant to statutory requirements. In Wood v. Battle Ground School Dist., 107 Wn. App. 550, 27 P.3d 1208 (2001), the plaintiff could not sustain a defamation claim against a school board president who made defamatory statements

---

[9] We note that the trial court did not address any of Vance's claims on the merits and dismissed them on the basis of immunity and the statute of limitations. However, we may affirm the trial court on any grounds supported by the record. See Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011).

within the scope of his official duties. Wood, 107 Wn. App. at 569. The court explained that "a publication [is] conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties." Wood, 107 Wn. App. at 569 (quoting Restatement (Second) of Torts § 598A (1977)).

The same is true here. See Bender v. City of Seattle, 99 Wn.2d 582, 601-02, 664 P.2d 492 (1983) (law enforcement officers have a qualified privilege when releasing information related to a criminal defendant). Defendants are required by statute to register offenders and publish that information. See RCW 72.09.345(1), RCW 43.43.540. Under Wood, those publications—even if arguably defamatory—are conditionally privileged. The privilege may be lost if Vance can show actual malice by clear and convincing evidence. Wood, 107 Wn. App. at 569-70. But Vance presents no evidence of actual malice. Vance's defamation claim fails.

## CONCLUSION[10]

For the foregoing reasons, we affirm the summary judgment dismissal of Vance's claims.

WE CONCUR:

---

[10] Given our disposition, we need not address Vance's remaining assertions or whether statutory or quasi-judicial immunity applies here.

-14-