**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| THOMAS and MARIE MADSEN, husband and wife, SNOW CREEK SHELLFISH, LLC, a Washington corporation, doing business as PORT DISCOVERY SEAFARMS, | No. 58232-5-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON, WASHINGTON DEPARTMENT OF FISH AND WILDLIFE, | |
| Respondents. | |

MAXA, P.J. – Thomas and Marie Madsen and Snow Creek Shellfish LLC, doing business as Port Discovery Seafarms (collectively the Madsens), appeal the trial court's ruling in their trespass lawsuit that the Washington Department of Fish and Wildlife (WDFW) was immune from liability unless it acted with gross negligence or with wanton misconduct, and the subsequent jury verdict in WDFW's favor based on that ruling.

This appeal arises out of a salmon habitat restoration project on state-owned land on Discovery Bay conducted by WDFW's agent, the North Olympic Salmon Coalition (NOSC). NOSC obtained permits from WDFW for the project. The Madsens alleged that the project released contaminants into the water, which spread to the Madsens' oyster farm on another part

of Discovery Bay and killed their oysters and oyster seed. The Madsens sued WDFW for trespass.

RCW 77.55.181(5) states that WDFW is immune from liability "for any adverse impacts resulting from a fish enhancement project permitted by [WDFW] . . . under the criteria of this section except upon proof of gross negligence or willful or wanton misconduct." The term "this section" refers to the earlier subsections of RCW 77.55.181, which include various substantive and procedural criteria for a streamlined permit application approval process. NOSC did not apply for a permit under RCW 77.55.181 or identify the project as a fish habitat enhancement project under RCW 77.55.181, and WDFW did not go through the steps of streamlined permit review outlined in RCW 77.55.181. Nevertheless, WDFW claimed that it was immune from suit under RCW 77.55.181(5) because the project met the criteria of a fish habitat enhancement project under RCW 77.55.181.

The trial court ruled that RCW 77.55.181(5) applied to WDFW's project, and instructed the jury that the Madsens could recover for trespass only if the trespass resulted from gross negligence or wanton misconduct. At trial, the jury found that NOSC was acting as WDFW's agent and that WDFW committed a trespass against the Madsens, but that the trespass was not the result of gross negligence or wanton misconduct. Therefore, the trial court entered judgment in favor of WDFW.

The Madsens argue on appeal that the immunity in RCW 77.55.181(5) does not apply to WDFW's project under the plain language of the statute, and therefore the trial court's jury instructions and special verdict applying the immunity statute were improper. The Madsens also argue that we should hold that on remand that the trial will be limited to the amount of damages

2

without the need to prove proximate cause and that they will be entitled to treble damages under RCW 4.24.630.

We hold that RCW 77.55.181(5) does not apply to WDFW's project because the project was not permitted by WDFW "under the criteria of this section." Therefore, the trial court erred in ruling that immunity did apply and in requiring the jury to find that WDFW's trespass resulted from gross negligence or wanton misconduct for the Madsens to recover damages for trespass. We direct that on remand, the new trial should address both proximate cause and the amount of damages. And we decline to address the Madsens' arguments regarding treble damages under RCW 4.24.630 because there is no trial court ruling on this issue in the record.

Accordingly, we reverse the judgment in favor of WDFW and remand for a trial on proximate cause and on trespass damages, if the jury finds proximate cause.

FACTS

The Madsens own Port Discovery Seafarms, an oyster farm on the eastern shore of Discovery Bay in Jefferson County. The Madsens' oyster operation began in 1989 by raising oyster larvae, known as oyster seed, grown in hatcheries into full-grown oysters sold on the market. The Madsens leased deep water shoreline areas from WDFW in addition to using their own land.

The Madsens' oysters, in particular their Snow Creek oyster, were a commercial success. They shipped Snow Creek oysters to distributors and restaurants across the country. The Madsens continued their oyster production and eventually started cultivating their own oyster seed.

*WDFW's Discovery Bay Projects*

Between 2003 and 2007, WDFW acquired land at the southern tip of Discovery Bay. WDFW also received a transfer of the property for restoration projects involving salmon habitats within the Snow and Salmon Creek estuary.

WDFW worked with NOSC in restoring the creeks and estuaries to rebuild salmon habitat at the South end of Discovery Bay. NOSC is a nonprofit regional fisheries enhancement group that can receive state funding for various salmon restoration projects. *See* RCW 77.95.060.

NOSC and the State coordinated on two projects at Salmon Creek estuary: the Snow Creek Estuary Restoration and Railroad Grade Removal at the southern end of Discovery Bay, and the Maynard Nearshore Restoration on the western shore of the bay. These projects included the removal of old buildings and wood waste, regrading a former railroad, and creating channels for salmon by removing fill material.

Beginning in 2013, NOSC applied to WDFW for permits to get approval for both projects. First, NOSC submitted a joint aquatic resources permit application (JARPA). In two places on the JARPA form, the applicant is required to check a box if applying for a fish habitat enhancement exemption. NOSC did not check either box. And NOSC did not otherwise identify the project as a fish habitat enhancement project under RCW 77.55.181. In addition, NOSC did not attach a special supplemental form required to claim a fish habitat enhancement exemption.

Second, NOSC pursued a hydraulic project approval (HPA) permit for working in the water. The HPA permit stated that "[e]very effort shall be taken during all phases of this project to ensure that sediment-laden water is not allowed to enter the stream." Ex. 24 at 5.

WDFW issued permits for the projects. The time between the permit application and permit issuance was over 600 days. The approved projects included moving thousands of cubic yards of material from the area, removing collapsed buildings and gravel berm, installing temporary culverts, and constructing tidal channels. The projects also involved removing wood waste that leaked toxic levels of metal leachates.

*Damage to the Madsens' Oysters*

In 2014, the Madsens expanded and acquired investors to grow oyster seed in addition to their regular oyster growing operation in Discovery Bay.

In 2015, the entire oyster farm, both seed and grown oyster, experienced what Tom Madsen described as a catastrophic loss. He observed plumes of "olive drab" moving into the water from the direction of WDFW's project site that left a "slimy goo." Rep. of Proc. at 638-39. The oyster seed and many of the oysters died. The surviving oysters began growing in funny shapes and funny colors. Those oysters were completely unmarketable.

The Madsens commissioned a report by a shellfish pathologist when his oysters died. That pathologist observed that "exposure to some toxicant in the time frame of the observed plume reported by the owner is consistent with the mortality event and with the shell deformities and lesions." Ex. 34 at 5.

*Procedural History*

The Madsens sued WDFW for trespass, negligence, nuisance and takings.[1] In their complaint, the Madsens asked for treble damages under RCW 4.24.630, the trespass statute.

---

[1] The trial court dismissed the takings claim, and the negligence and nuisance claims were not submitted to the jury. The Madsens do not appeal those determinations.

WDFW moved for summary judgment, arguing that it was immune from liability under RCW 77.55.181(5).[2] WDFW asserted that it was immune because the project was substantively characterized as a fish habitat enhancement project and met the criteria of RCW 77.55.181. The Madsens argued that immunity under RCW 77.55.181 only extends to WDFW with respect to its actions permitting fish habitat enhancement projects, not in its capacity as the landowner where the project occurs. They also argued that immunity only attaches to actions permitted under the streamlined review of RCW 77.55.181, not other activities outside the scope of a fish habitat enhancement project. The trial court found that RCW 77.55.181(5) applied to the case, but there were genuine issues of material fact as to whether WDFW's actions constituted gross negligence or willful or wanton misconduct. Therefore, the trial court denied summary judgment.

At trial, the Madsens sought to prove trespass against WDFW under *Bradley v. American Smelting and Refining Co.*, 104 Wn.2d 677, 691, 709 P.2d 782 (1985), for intrusion of toxic sediment particles onto the Madsens property.[3] They also argued that RCW 4.24.630(1), a trespass statute, allowed recovery of treble damages for their trespass claim under *Bradley* if they prevailed. WDFW argued that RCW 4.24.630(1) was a distinct cause of action for physically going onto the property of another and was inapplicable.

At trial, the trial court instructed the jury on the elements of trespass under *Bradley* and added a gross negligence or wanton misconduct requirement into the jury instructions. Jury Instruction 11 stated,

---

[2] WDFW also sought immunity under RCW 77.85.050(5). The trial court determined that immunity under RCW 77.85.050(5) was not applicable. WDFW does not appeal that determination.

[3] The court in *Bradley* allowed a trespass claim based on the intrusion of airborne contaminants onto the plaintiffs' property. 104 Wn.2d at 684-88.

For the Plaintiffs' Trespass claim, the Plaintiffs have the burden of proving, on a more probable than not basis, the following:

(1) WDFW caused particles or things to invade the Plaintiffs' property on or after July 1, 2015;

(2) WDFW intended to do the acts that caused particles or things to invade the Plaintiffs' property;

(3) It was reasonably foreseeable to WDFW that its activities would send particles or things onto the Plaintiffs' property;

(4) Those particles or things caused damage to the Plaintiffs' property and/or business; and

(5) WDFW's actions were the result of gross negligence or wanton misconduct.

If you find the Plaintiffs' have proved all the elements on which they have the burden of proof regarding this trespass claim, your verdict should be for the Plaintiffs on the trespass claim. If, on the other hand, the Plaintiffs have failed to prove any of the elements, your verdict should be for WDFW on the trespass claim.

Clerk's Papers (CP) at 3786-87. The Madsens objected to how gross negligence or wanton misconduct should fit into the jury instructions for trespass, but did not object on the grounds that immunity did not apply.

The special verdict form separated the elements of trespass from the factual issue regarding immunity. Question Two asked the jury if it found that WDFW committed a trespass against the Madsens. Question Three asked if the trespass was the result of gross negligence or wanton misconduct, as required under the immunity statute. Question Four asked whether the trespass was a proximate cause of the Madsens' damages.

The jury instructions did not address treble damages under RCW 4.24.630(1). But nothing in the record shows whether the trial court ruled on the applicability of that statute.

The jury found that NOSC was operating as WDFW's agent[4] and that WDFW committed trespass against the Madsens. But the jury found that the trespass was not a result of gross

---

[4] WDFW does not appeal the jury's determination that NOSC acted as the WDFW's agent.

negligence or wanton misconduct.  Therefore, the jury did not reach the question regarding proximate cause or damages.

The Madsens subsequently filed a motion for judgment as a matter of law and for a new trial.  The trial court denied both motions.  The trial court entered judgment in favor of WDFW and dismissed the case based on WDFW's immunity.

The Madsens appeal the trial court's judgment in favor of WDFW.

ANALYSIS

A.      APPLICATION OF RCW 77.55.181(5)

The Madsens argue that RCW 77.55.181(5) does not apply to WDFW's salmon restoration project under the plain language of the statute.  We agree.

1.     Failure to Preserve Error

WDFW argues that the Madsens failed to preserve their arguments regarding the inapplicability of RCW 77.55.181(5) for appeal because they did not make the specific arguments made in this appeal in the trial court.  We disagree.

At summary judgment, the Madsens' principal argument against the motion was that WDFW's theory of immunity was overbroad and that RCW 77.55.181(5) only protects WDFW in its role permitting projects in the streamlined review process.  On appeal, the Madsens have refined their argument regarding the statute's scope, arguing that immunity only attaches to projects that qualify under the statute, to projects actually permitted under the streamlined review process of RCW 77.55.181, and to actions within the scope of the authorized permit.

WDFW relies on RAP 2.5(a), which states that an appellate court may refuse to review any "claim of error" not raised in the trial court.  Similarly, RAP 9.12 states that in an appeal of a summary judgment order, "the appellate court will consider only evidence and issues called to

8

the attention of the trial court." However, the "claim of error" here is that the trial court erroneously ruled that RCW 77.55.181(5) applied to WDFW's project. The Madsens clearly made that claim in the trial court. And the "issue" is the inapplicability of RCW 77.55.181(5), and the Madsens clearly raised that issue in the trial court.

The Madsens do make some specific arguments regarding the inapplicability of RCW 77.55.181(5) on appeal that they did not make in the trial court. However, as long as a party makes a *claim* in the trial court, that party generally is not precluded from asserting new arguments supporting that claim on appeal. *Thomsen Ruston, LLC v. PC Collections, LLC*, 25 Wn. App. 2d 382, 397, 523 P.3d 805 (2023), *review denied*, 1 Wn.3d 1032 (2023).

We reject WDFW's argument that the Madsens failed to preserve their immunity arguments.

2.    Statutory Interpretation

This case centers on the interpretation of RCW 77.55.181(5). Statutory interpretation is a matter of law that we review de novo. *Green v. Pierce County*, 197 Wn.2d 841, 849, 487 P.3d 499 (2021). The primary goal in interpreting a statute is to determine and give effect to the legislature's intent. *Id.* at 849-50. We consider the language of the statute, the context of the statute, related statutes, and the statutory scheme as a whole. *Randy Reynolds & Assocs. Inc. v. Harmon*, 193 Wn.2d 143, 155, 437 P.3d 677 (2019).

We do not "rewrite plain statutory language under the guise of construction." *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018). We "give effect to all the language in the statute and do not render any portion meaningless or superfluous." *TST, LLC v. Mfd. Hous. Disp. Resol. Program of Off. of Att'y Gen.*, 17 Wn. App. 2d 662, 668, 485 P.3d 977 (2021). We give undefined statutory language its usual and ordinary meaning and interpret words in the

context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 396, 325 P.3d 904 (2014).

The interpretation ends if the plain language is unambiguous. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). A statute is ambiguous if it is subject to more than one reasonable interpretation. *Id.* If we determine that a statute is ambiguous, we " 'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.' " *Id.* (quoting *Christensen v. Ellsworth,* 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

Finally, grants of immunity are in derogation of the common law, and we strictly construe them. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 600, 257 P.3d 532 (2011).

3.    Provisions of RCW 77.55.181

RCW 77.55.181 provides for a streamlined permit review and approval process for fish habitat enhancement projects. A fish habitat enhancement project may be reviewed and permitted under the process in the statute if it accomplishes one or more of the following tasks:

> (i) Elimination of human-made or caused fish passage barriers, including
>   (A) Culvert repair and replacement; and
>   (B) Fish passage barrier removal projects that comply with the forest practices rules . . . ;
> (ii) Restoration of an eroded or unstable stream bank employing the principle of bioengineering, including limited use of rock as a stabilization only at the toe of the bank, and with primary emphasis on using native vegetation to control the erosive forces of flowing water;
> (iii) Placement of woody debris or other instream structures that benefit naturally reproducing fish stocks; or
> (iv) Restoration of native kelp and eelgrass beds and restoring native oysters.

RCW 77.55.181(1)(a).

RCW 77.55.181(1)(b) states,

> [WDFW] shall develop size or scale threshold tests to determine if projects accomplishing any of these tasks should be evaluated under the process created in

> this section or under other project review and approval processes. *A project proposal shall not be reviewed under the process created in this section if [WDFW] determines that the scale of the project raises concerns regarding public health and safety.*

(Emphasis added.)

Under RCW 77.55.181(1)(c), a fish habitat enhancement project must be approved in one of several ways to receive the permit review and approval process created in RCW 77.55.181. These include approval by WDFW under chapters 77.95 or 77.100 RCW and by WDFW "as a department-sponsored fish habitat enhancement or restoration project." RCW 77.55.181(1)(c)(i), (iii). RCW 77.55.181(3)(a) requires an applicant for projects that meet the above criteria to obtain a permit using a JARPA, which must be provided to WDFW and each appropriate local government.

RCW 77.55.181(3) provides a streamlined approval process for projects permitted under the section. Local governments are allowed a 15-day comment period after receiving the JARPA. RCW 77.55.181(3)(b). Then WDFW must, within 45 days, issue the permit, deny the permit, "or make a determination that the review and approval process created by this section is not appropriate for the proposed project." RCW 77.55.181(3)(c)(i). The statute states that WDFW "shall base this determination on identification during the comment period of adverse impacts that cannot be mitigated by the conditioning of a permit." RCW 77.55.181(3)(c)(i).

Significantly, RCW 77.55.181(2) states that a permit approved according to the provisions of RCW 77.55.181 is not subject to the requirements of the State Environmental Policy Act (SEPA), RCW 43.21C.030(2)(c).[5] In addition, local governments cannot require

---

[5] The 45 day time frame is significantly shorter than under SEPA, which requires the State to make a threshold determination under SEPA within 90 days and a final determination within 24 months. RCW 43.21C.033(1)

permits or charge fees "for fish habitat enhancement projects that meet the criteria of subsection (1) of this section and that are reviewed and approved according to the provisions of this section." RCW 77.55.181(4).

As noted above, RCW 77.55.181 limits WDFW's civil liability. RCW 77.55.181(5) states,

> No civil liability may be imposed by any court on the state or its officers and employees for any adverse impacts resulting from a fish enhancement project *permitted* by [WDFW] or the department of natural resources *under the criteria of this section* except upon proof of gross negligence or willful or wanton misconduct.

(Emphasis added.)

4.   Analysis

The Madsens argue that RCW 77.55.181(5) does not apply because NOSC did not apply for its permits for the project under RCW 77.55.181 and WDFW did not issue the permits under the criteria of RCW 77.55.181. We agree.[6]

RCW 77.55.181(5) expressly states that immunity applies to adverse impacts resulting from a fish enhancement project "permitted" by WDFW "under the criteria of this section." This language is unambiguous. Immunity applies only if WDFW issues a permit for a fish enhancement project under the criteria of RCW 77.55.181.

On appeal, WDFW acknowledges that NOSC's JARPA application did not seek or provide the information necessary for a fish habitat enhancement project exemption eligible for streamlined review under RCW 77.55.181. And it is undisputed that WDFW did not issue

---

[6] The Madsens also argue that (1) the project did not qualify for the streamlined process under RCW 77.55.181(1)(a) and (2) immunity does not apply here because the project permit expressly does not authorize trespass. Because we reverse on other grounds, we do not address these arguments.

permits to NOSC under the procedures outlined in RCW 77.55.181. Therefore, under the plain language of RCW 77.55.181(5), immunity does not apply in this case.

WDFW argues that immunity applies as long as the project would have qualified under RCW 77.55.181. It claims that a project need not utilize the streamlined review process for immunity to apply. However, RCW 77.55.181(5) does not state that immunity applies if a project "satisfies the criteria" in RCW 77.55.181. The project must be *permitted under* the criteria of RCW 77.55.181. This language necessarily means that immunity applies only if WDFW actually issues a permit under the streamlined procedure in RCW 77.55.181(3). WDFW's argument would require us to add language to the statute that is not present, which we cannot do. *See McColl*, 6 Wn. App. 2d at 91.

Further, WDFW's argument ignores that fact that WDFW is authorized under RCW 77.55.181(3)(c)(i) to deny a permit or determine that the streamlined review process is not appropriate even if a project qualifies under RCW 77.55.181(1)(a). Under subsection (b), "[a] project proposal shall not be reviewed under the process created in this section if [WDFW] determines that the scale of the project raises concerns regarding public health and safety." In addition, the determination under RCW 77.55.181(3)(c)(i) that the streamlined review process is not appropriate can be based on "identification during the comment period of adverse impacts that cannot be mitigated by the conditioning of a permit." Therefore, a project that qualifies under RCW 77.55.181(1)(a) will not necessarily be "permitted . . . under the criteria of this section" by WDFW. RCW 77.55.181(5).

Finally, this interpretation is consistent with the principle that grants of immunity that are in derogation of the common law must be strictly construed. *Michaels*, 171 Wn.2d at 600. WDFW is seeking a broad construction of the immunity provision.

13

We conclude that immunity under RCW 77.55.181(5) does not apply in this case because WDFW did not "permit" NOSC's project "under the criteria" of RCW 77.55.181.

B.    JURY INSTRUCTION CONTAINING IMMUNITY LANGUAGE

The Madsens argue that because RCW 77.55.181(5) does not apply, the trial court erred in adding the element of gross negligence or wanton misconduct to the jury instructions for trespass.  We agree.

Initially, WDFW argues that the Madsens did not preserve their challenge to the trial court's jury instruction that included the gross negligence or wanton misconduct requirement because the Madsens did not object to that instruction.  However, the trial court previously had ruled on summary judgment that RCW 77.55.181(5) applied.  Therefore, the jury instruction was a correct statement of the law based on the court's ruling.  The Madsens had made it clear that they objected to the court's ruling, and they engaged in extended discussion at trial over how gross negligence or wanton misconduct should not be given within the jury instructions for trespass.  Therefore, they did not need to object to the jury instruction on the specific grounds that immunity did not apply generally.  *Cf. Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 61-63, 882 P.2d 703 (1994) (holding that a party does not need to object to factual distinctions in a special verdict form when the "issue was resolved on a summary motion brought before trial" and the trial court declined to reconsider its summary judgment ruling).

We hold above that RCW 77.55.181(5) does not apply to WDFW's project.  Therefore, whether WDFW engaged in gross negligence or wanton misconduct is immaterial to the Madsens' trespass claim.  Accordingly, we hold that the trial court erred in instructing the jury

that they had to find gross negligence or wanton misconduct to find in favor of the Madsens on their trespass claim.

C.     SCOPE OF NEW TRIAL ON REMAND

The Madsens argue that this case should be remanded for a new trial only on the amount of damages. WDFW argues that if this court reverses, it should remand for a new trial on both proximate causation and damages. We agree with WDFW.[7]

The jury verdict form contained a question asking if WDFW committed a trespass and a separate question asking whether that trespass was a proximate cause of damages to the Madsens. However, the jury never reached the proximate cause question because it found that the trespass was not the result of gross negligence or wanton misconduct.

The Madsens emphasize that the trial court's instructions stated that to prove trespass, the Madsens had to show that "WDFW intended to do acts that *caused* particles or things to invade the Plaintiffs' property" and that "[t]hose particles or things *caused* damage to the Plaintiffs' property and/or business." CP at 3786-87 (emphasis added). They argue that based on this instruction, when the jury found that WDFW committed trespass they necessarily found proximate causation.

But the fact remains that while the jury found that WDFW trespassed, the jury did not expressly answer whether the trespass was a proximate cause of damages. And the damages question on the verdict form, which the jury also did not answer, specifically incorporates proximate cause: "What do you find to be the Plaintiff's amount of damages proximately caused by the trespass." CP at 3801.

_____

[7] There is no question that the new trial will not address whether a trespass occurred. The jury found that WDFW trespassed.

We direct that on remand, the new trial should address both proximate cause and the amount of damages, if the jury finds proximate cause. The new trial need not address trespass liability.

D.      APPLICATION OF RCW 4.24.630(1)

The Madsens argue that we should hold that they will be entitled to treble damages under RCW 4.24.630 on remand. We decline to address this issue.

RCW 4.24.630(1) states that a person who "goes onto the land of another" and causes injury to the land is liable for treble the amount of damages. The issue is whether the defendant must physically enter the plaintiff's property for the treble damages provisions of RCW 4.24.630(1) to apply, or whether the entry of contaminants onto the property under a *Bradley* theory is sufficient.

The Madsens claim that the trial court rejected its argument that RCW 4.24.630(1) applies to their trespass claim. However, the record does not contain either a written order or the transcript of an oral ruling that addresses the applicability of RCW 4.24.630. WDFW points out that although the Madsens requested that the trial court rule on the applicability of RCW 4.24.630(1), nothing in the record shows if the trial court ruled on that motion. The Madsens even acknowledge that the court's ruling was off the record.

In the absence of an applicable record, we have nothing to review on appeal. And we generally do not issue advisory opinions. *Gunn v. Riely*, 185 Wn. App. 517, 532, 344 P.3d 1225 (2015). Accordingly, we decline to address whether RCW 4.24.630(1) applies in this case. On remand, the Madsens will be able to argue that they are entitled to treble damages under RCW 4.24.630(1).

E.      ATTORNEY FEES ON APPEAL

The Madsens request attorney fees on appeal under RCW 4.24.630. However, as noted above, we decline to address the applicability of RCW 4.24.630. Therefore, the Madsens are not entitled to recover attorney fees under that statute. In any event, the Madsens failed to request attorney fees in a separate section of their brief, as required under RAP 18.1(b).

## CONCLUSION

We reverse the trial court's judgment in favor of WDFW and remand for a trial on proximate cause and on trespass damages, if the jury finds proximate cause.

MAXA, P.J.

We concur:

LEE, J.

GLASGOW, J.

17